1   Mark H. Meyerhoff, Bar No. 180414
    mmeyerhoff@lcwlegal.com
2   Elizabeth T. Arce, Bar No. 216687
    earce@lcwlegal.com
3   LIEBERT CASSIDY WHITMORE
    A Professional Law Corporation
4   6033 W. Century Boulevard, Suite 500
    Los Angeles, CA  90045
5
    Telephone:  (310) 981-2000
6   Facsimile:   (310) 337-0837
7   Attorneys for Defendants
    CITY OF BARSTOW, HECTOR
8   RODRIGUEZ, CALEB LEE
    GIBSON, RUDY ALCANTARA
9   and MICHAEL P. HUNTER

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  RAY WARREN,                          Case No.  EDCV 08-0405-DDD (OPx)

14              Plaintiff,               **DEFENDANTS' APPENDIX OF**
                                         **EVIDENCE IN SUPPORT OF**
15          v.                           **MOTION FOR SUMMARY**
                                         **JUDGMENT (Part I)**
16  CITY OF BARTSTOW, HECTOR
    RODRIGUEZ, in his capacity as the    [Fed. R. Civ. P. 56]
17  City Manager for the City of Barstow,
    CALEB LEE GIBSON, individually
18  and in his capacity as Chief of Police
    for the City of Barstow; RUDY
19  ALCANTARA individually and in his
    capacity as Lieutenant for the City of
20  Barstow Police Department;
    MICHAEL P. HUNTER, individually
21  and in his capacity as Sergeant for the
    City of Barstow; and DOES 1 through
22  9 inclusive,
23
                Defendants.
24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045

1  Defendants CITY OF BARSTOW, HECTOR RODRIGUEZ, CALEB LEE
2  GIBSON, RUDY ALCANTARA and MICHAEL P. HUNTER hereby file this
3  Appendix of Evidence in support of its Motion for Summary Judgment.  The
4  following declarations and exhibits are attached to the Appendix of Evidence:
5  **DECLARATION OF HECTOR RODRIGUEZ**
6  **DECLARATION OF TIM HEIDEN**
7  **DECLARATION OF CALEB LEE GIBSON**
8  **DECLARATION OF ANITA HAMILTON**
9  **DECLARATION OF ELIZABETH T. ARCE**
10  **DECLARATION OF RUDY ALCANTARA**
11  Exhibit No. 1:  Letter dated May 8, 2007 from Hector Rodriguez to Ray
12  Warren.
13  Exhibit No. 2:  Report of Investigation IA 2007-001.
14  Exhibit No. 3:  Section 1006 from the Barstow Police Department's
15  ("Department") Policies and Procedures Manual regarding Report Accountability.
16  Exhibit No. 4:  Section 124 from the Department's Policies and Procedures
17  Manual regarding Special Duty Assignments.
18  Exhibit No. 5:  Section 329 from the Department's Policies and Procedures
19  Manual regarding the  Procedure for a Ride-Along.
20  Exhibit No. 6:  Notice of Intent to Dismiss dated March 14, 2007.
21  Exhibit No. 7:  E-mail string between Ray Warren and Caleb Lee Gibson
22  dated November 8, 2006 to November 17, 2006.
23  Exhibit No. 8:  E-mail string between Ray Warren and Caleb Lee Gibson
24  dated November 11, 2006 to December 3, 2006.
25  Exhibit No. 9:  Ray Warren's Performance Appraisal Report for the period
26  April 1, 2005 to April 1, 2006.
27  Exhibit No. 10: Ray Warren's Performance Appraisal Report for the period
28  October 2004 to October 2005.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045

1    Exhibit No. 11: Ray Warren's Performance Appraisal Report for the period

2    April 1, 2001 to April 1, 2004.

3    Exhibit No. 12:  Memorandum dated December 4, 2006 from Sergeant Keith

4    Libby to Ray Warren.

5    Exhibit No. 13:  Plaintiff Ray Warren's Response to Defendants' Request

6    for Production of Documents, Set One.

7    Exhibit No. 14:  E-mail from Ray Warren to Eileen Martin dated November

8    1, 2006.

9    Exhibit No. 15:  E-mail from Ray Warren to Rudy Alcantara dated January

10   5, 2007.

11   Exhibit No. 16: E-mail from Ray Warren to moeanray@verizon.net and

12   Eileen Martin dated December 3, 2006.

13   Exhibit No. 17:  Relevant excerpts of the January 19, 2010 deposition of

14   Plaintiff Ray Warren taken in this action.

15   Exhibit No. 18:  Relevant excerpts of the March 12, 2010 deposition of

16   Defendant Caleb Lee Gibson taken in this action.

17   Exhibit No. 19:  Relevant excerpts of the March 11, 2010 deposition of

18   Defendant Rudolph Alcantara taken in this action.

19   Exhibit No. 20:   Letter dated June 21, 2010 from Elizabeth Arce to Russell

20   Perry.

21

22   Dated:  July 16, 2010                    LIEBERT CASSIDY WHITMORE

23

24                                            By: _____
                                                 Mark H. Meyerhoff
25                                               Elizabeth T. Arce
                                                 Attorneys for Defendants
26                                               CITY OF BARSTOW, HECTOR
                                                 RODRIGUEZ, CALEB LEE
27                                               GIBSON, RUDY ALCANTARA
                                                 and MICHAEL P. HUNTER
28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# DECLARATION OF HECTOR RODRIGUEZ

1   Mark H. Meyerhoff, Bar No. 180414
    mmeyerhoff@lcwlegal.com
2   Elizabeth T. Arce, Bar No. 216687
    earce@lcwlegal.com
3   LIEBERT CASSIDY WHITMORE
    A Professional Law Corporation
4   6033 W. Century Boulevard, Suite 500
    Los Angeles, CA 90045
5
    Telephone: (310) 981-2000
6   Facsimile: (310) 337-0837

7   Attorneys for Defendants
    CITY OF BARSTOW, HECTOR
8   RODRIGUEZ, CALEB LEE
    GIBSON, RUDY ALCANTARA
9   and MICHAEL P. HUNTER

10

11                  UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13   RAY WARREN,                          Case No. EDCV 08-0405-DDD (OPx)

14              Plaintiff,
                                          DECLARATION OF HECTOR
15       v.                               RODRIGUEZ IN SUPPORT OF
                                          DEFENDANTS' MOTION FOR
16   CITY OF BARSTOW, HECTOR              SUMMARY JUDGMENT
     RODRIGUEZ, in his capacity as the
17   City Manager for the City of Barstow, [Fed. R. Civ. P. 56]
     CALEB LEE GIBSON, individually
18   and in his capacity as Chief of Police
     for the City of Barstow; RUDY
19   ALCANTARA individually and in his
     capacity as Lieutenant for the City of
20   Barstow Police Department;
     MICHAEL P. HUNTER, individually
21   and in his capacity as Sergeant for the
     City of Barstow; and DOES 1 through
22   9 inclusive,

23
                Defendants.
24

25

26

27

28
     426425.1 BA080-024              DECLARATION OF HECTOR RODRIGUEZ
                                        IN SUPPORT OF MOTION
                                     FOR SUMMARY JUDGMENT

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

## DECLARATION OF HECTOR RODRIGUEZ

I, Hector Rodriguez, declare that I have personal knowledge of the following facts and if called as a witness I would competently testify thereto:

1.    I was hired by the City of Barstow ("City") in March 2006. My first position with the City was Finance Manager. In approximately 2006, I became the City Manager for the City. My job duties as City Manager included overseeing the day-to-day administration of City affairs and implementation of City Council policies. As the City Manager, I directed a staff of over 100 employees and assisted them in accomplishing the City's goals and objectives while ensuring that the City received services in an effective, cost-efficient manner. Finally, my responsibilities included serving as the City Council's primary adviser. In this capacity, I prepared a recommended budget for the Council's consideration. I was also responsible for recruiting, hiring and supervising the City's employees. My responsibilities regarding City employees also included taking disciplinary action against them up to and including termination. My employment with the City concluded in approximately November 2007.

2.    During my time as City Manager, I prepared and signed a letter dated May 8, 2007 notifying Ray Warren of the City's decision to terminate his employment. At the time, Mr. Warren was a police officer in the City's Police Department. A true and correct copy of my May 8th letter is attached hereto as Exhibit "1" to the Appendix of Evidence in Support of the Motion for Summary Judgment. My letter to Mr. Warren also identified the documentation I relied upon in reaching my decision to terminate his employment. None of the materials I reviewed referenced any conduct Mr. Warren engaged in on behalf of his union, the Barstow Police Officers' Association ("BPOA"). My decision to terminate Mr. Warren was based upon my good faith belief after reviewing the documentation provided to me that Mr. Warren had violated the law and the City's policies and procedures by tape recording a meeting with his supervisors without their consent.

1    In addition, my decision to terminate Mr. Warren was not based on either his

2    membership in the BPOA or any actions he took on behalf of the BPOA.

3        I declare under penalty of perjury under the laws of the United States of

4    America and the State of California that the foregoing is true and correct.

5        Executed this 12th day of July, 2010, at Los Angeles, California.

6

7

8

9                                   Hector Rodriguez

10

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF TIM HEIDEN

1   Mark H. Meyerhoff, Bar No. 180414
    mmeyerhoff@lcwlegal.com
2   Elizabeth T. Arce, Bar No. 216687
    earce@lcwlegal.com
3   LIEBERT CASSIDY WHITMORE
    A Professional Law Corporation
4   6033 W. Century Boulevard, Suite 500
    Los Angeles, CA 90045
5
    Telephone:  (310) 981-2000
6   Facsimile:   (310) 337-0837

7   Attorneys for Defendants
    CITY OF BARSTOW, HECTOR
8   RODRIGUEZ, CALEB LEE
    GIBSON, RUDY ALCANTARA
9   and MICHAEL P. HUNTER

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12

13   RAY WARREN,                        Case No.  EDCV 08-0405-DDD (OPx)

14              Plaintiff,              **DECLARATION OF TIM HEIDEN
                                        IN SUPPORT OF DEFENDANTS'
15         v.                           MOTION FOR SUMMARY
                                        JUDGMENT**
16   CITY OF BARTSTOW, HECTOR
     RODRIGUEZ, in his capacity as the  [Fed. R. Civ. P. 56]
17   City Manager for the City of Barstow,
     CALEB LEE GIBSON, individually
18   and in his capacity as Chief of Police
     for the City of Barstow; RUDY
19   ALCANTARA individually and in his
     capacity as Lieutenant for the City of
20   Barstow Police Department;
     MICHAEL P. HUNTER, individually
21   and in his capacity as Sergeant for the
     City of Barstow; and DOES 1 through
22   9 inclusive,
23
               Defendants.
24

25

26

27

28

427255.1 BA080-024                      DECLARATION OF TIM HEIDEN IN SUPPORT
                                        OF MOTION FOR SUMMARY JUDGMENT

## DECLARATION OF TIM HEIDEN

I, Tim Heiden, declare that I have personal knowledge of the following facts
and if called as a witness I would competently testify thereto:

1.      I have been employed by the City of Barstow ("City") since 1994.  I
attended the Police Academy as a trainee between July 1994 and November 1994.
On November 18, 1994, I became a sworn peace officer and began working for the
City's Police Department ("Department") as a police officer in patrol.  Before I was
promoted to the rank of Sergeant, I worked a variety of assignments as a police
officer.  In addition to patrol, I was also assigned a special detail known as the
Community Orientation Policing Detail.  My primary responsibilities were to patrol
the area in and around the Lenwood area of the City which contained many retail
stores.  Following this special detail assignment, I was assigned to the position of
School Resources Officer where my primary duty was the safety of the children.
After serving as a School Resources Officer, I was promoted to detective.
Thereafter, I was promoted to the rank of Sergeant on March 28, 2004.  I have been
both a patrol and an administrative Sergeant.  In November 2007, I became the
adjutant to the current Chief of the Department Dianne Burns.  As the adjutant, my
responsibilities include being the Custodian of the Records for the Department.

2.      Attached as Exhibit "2" to the Appendix of Evidence in Support of the
Summary Judgment Motion is a true and correct copy of the Report of Investigation
from the Department's internal investigation into a complaint against Ray Warren
for tape recording a confidential communication without the consent of the
involved parties.  This internal investigation was assigned number IA 2007-001.
This Report of Investigation was contained in the internal investigation file for this
matter which is kept in a storage area operated and maintained by the Police
Department for purposes of storing all internal investigation files.  I am responsible
for maintaining the internal investigation files and it is my responsibility to retrieve

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

these files.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this ___14TH___ day of July, 2010, at Barstow, California.

_____
Tim Heiden

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

427255.1 BA080-024

- 2 -

DECLARATION OF TIME HEIDEN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

011

# DECLARATION OF CALEB LEE GIBSON

Mark H. Meyerhoff, Bar No. 180414
mmeyerhoff@lcwlegal.com
Elizabeth T. Arce, Bar No. 216687
earce@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Telephone: (310) 981-2000
Facsimile: (310) 337-0837

Attorneys for Defendants
CITY OF BARSTOW, HECTOR
RODRIGUEZ, CALEB LEE
GIBSON, RUDY ALCANTARA
and MICHAEL P. HUNTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY WARREN,<br><br>             Plaintiff,<br><br>            v.<br><br>CITY OF BARTSTOW, HECTOR RODRIGUEZ, in his capacity as the City Manager for the City of Barstow, CALEB LEE GIBSON, individually and in his capacity as Chief of Police for the City of Barstow; RUDY ALCANTARA individually and in his capacity as Lieutenant for the City of Barstow Police Department; MICHAEL P. HUNTER, individually and in his capacity as Sergeant for the City of Barstow; and DOES 1 through 9 inclusive,<br><br>            Defendants. | Case No. EDCV 08-0405-DDD (OPx)<br><br>**DECLARATION OF CALEB LEE GIBSON IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Fed. R. Civ. P. 56] |

425911.1 BA080-024

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

## DECLARATION OF CALEB LEE GIBSON

I, Caleb Lee Gibson, declare that I have personal knowledge of the following facts and if called as a witness I would competently testify thereto:

1.     I am the former Chief of the City of Barstow's ("City") Police Department ("Department"). I retired on December 30, 2007. I began working for the City as a reserve officer in the Department in the late 1970s. I was hired as a full-time police officer in September 1979. I was promoted to the rank of Sergeant in 1986. Before becoming a Sergeant, I also held the rank of corporal. In 2001, I was promoted to the rank of Lieutenant. I became Chief of the Department in 2003.

2.     During the course of my employment with the City, I was familiar with and enforced the Department's Policies and Procedures Manual. Attached as Exhibit "3" to the Appendix of Evidence in Support of the Summary Judgment Motion ("Appendix of Evidence") is a true and correct copy of Section 1006 from the Policies and Procedures Manual regarding Report Accountability that was in effect when I was Chief of the Department.

3.     Attached as Exhibit "4" to the Appendix of Evidence is a true and correct copy of Section 124 from the Policies and Procedures Manual regarding Special Duty Assignments that was in effect when I was Chief of the Department.

4.     Attached as Exhibit "5" to the Appendix of Evidence is a true and correct copy of Section 329 from the Policies and Procedures Manual regarding the Procedure for a Ride-Along that was in effect when I was Chief of the Department.

5.     During my tenure as Chief of the Department, I became aware of a complaint filed by Sergeant Michael Hunter against Officer Ray Warren on February 12, 2006. Sergeant Hunter's complaint arose from Officer Warren's alleged failure to comply with an order to complete 5 field interview cards during his shift and Officer Warren's failure to assist other officers with customers involved in a fight at Denny's Restaurant. I also learned that Officer Warren filed a

425911.1 BA080-024

- 1 -          DECLARATION OF CALEB LEE GIBSON
                  IN SUPPORT OF MOTION
                  FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

complaint against Sergeant Hunter a few days later on February 15, 2006 concerning the same incident. Specifically, Officer Warren alleged that Sergeant Hunter used excessive force in handling the customers involved in the fight. I asked the Administrative Lieutenant, Richard Harpole, to conduct an internal investigation into both complaints. Lieutenant Harpole concluded his investigation into Sergeant Hunter's and Officer Warren's complaints before Officer Warren was placed on administrative leave on January 17, 2007 for an unrelated incident.

6. I am aware that Officer Warren was BPOA President in approximately 2006. I understand that Officer Warren filed a lawsuit claiming that I retaliated against him because of the positions he took as President of the BPOA. However, I never took any action against Officer Warren for anything he said or did as President of the BPOA.

7. I understand that Officer Warren accuses me of requiring him to notify the Watch Commander every time he goes to the City's administrative offices while on duty to prevent him from conducting BPOA-related business with City personnel. However, I did not impose this requirement on Officer Warren to prevent him from conducting BPOA business, nor did I base my order on anything he said as President of the BPOA. I wanted all police officers, not just Officer Warren, to keep their supervisors informed of their whereabouts when leaving the Department so that they could be located in case of an emergency. I also wanted to make sure Officer Warren was not spending more time on BPOA issues than permitted under the Memorandum of Understanding between the City and the BPOA. In addition, I wanted the Watch Commanders to be aware of police officers' whereabouts because I know that City personnel have complained for years, going back to when I was a police officer, about the frequent presence of officers in their offices visiting and inferring with their ability to do their jobs.

8. I am also aware that the Patrol Lieutenant, Rudy Alcantara, removed

425911.1 BA080-024     -2-     DECLARATION OF CALEB LEE GIBSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

015

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Officer Warren from serving as an Officer-In-Charge ("OIC"). It was my understanding from Lieutenant Alcantara that he was not comfortable with Officer Warren serving as OIC. I deferred to Lieutenant Alcantara's judgment regarding Officer Warren's removal because the Sergeants and Patrol Lieutenant typically handle matters relating to OICs. My decision to not intervene in Officer Warren's removal was not based on anything he said as President of the BPOA.

9.      The City's school district has a contract that requires the Department to assign two School Resources Officers ("SRO") to local schools to maintain safety. I believe the SRO position is an extremely important one because it directly related to the safety of children and educators. In late 2006, I posted a memo in the Department announcing the availability of the SRO positions. After no one applied for the positions, I selected Officer Warren to fill one of the SRO positions. I choose Officer Warren for the SRO position because I knew that he wanted to promote and I believed this position would give him the opportunity to show his supervisors that he had potential. Although I felt Officer Warren's skills as a patrol officer were not strong, I believed that his strongest points such as being well-liked and respectful to members of the community would allow him to do a good job as an SRO because the position required frequent interaction with school administration, teachers and campus monitors. My decision to assign Officer Warren to the SRO position was not based on anything Warren said as President of the BPOA.

10.     As discussed above, Officer Warren was placed on administrative leave on January 17th for allegedly tape recording a meeting with his superiors. I asked Lieutenant Harpole to conduct an internal investigation to Officer's Warren conduct at the meeting. After Lieutentant Harpole completed his investigation, he prepared a final report setting forth his findings. Based upon my review of Lieutenant Harpole's report and other supporting documents, I recommended to the

City Manager that Officer Warren be terminated. As a result, a Notice of Intent to Dismiss was sent to Officer Warren. Although I did not personally draft this Notice, I carefully reviewed it to make sure that I agreed with all of the statements contained in it. A true and correct copy of this Notice is attached as Exhibit "6" to the Appendix of Evidence. My decision to recommend Officer Warren's termination was not based on anything he said as President of the BPOA.

11.    Attached as Exhibit "7" to the Appendix of Evidence is a true and correct copy of an e-mail I prepared dated November 15, 2006 where I responded to Officer Warren's e-mail dated November 8, 2006.

12.    Attached as Exhibit "8" to the Appendix of Evidence is a true and correct copy of an e-mail I prepared dated November 15, 2006 where I responded to Officer Warren's e-mail to me dated November 11, 2006.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this _14 $^{TH}$_ day of July, 2010, at Barstow, California.

Caleb Lee Gibson

DECLARATION OF CALEB LEE GIBSON
IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# DECLARATION OF ANITA HAMILTON

1   Mark H. Meyerhoff, Bar No. 180414
    mmeyerhoff@lcwlegal.com
2   Elizabeth T. Arce, Bar No. 216687
    earce@lcwlegal.com
3   LIEBERT CASSIDY WHITMORE
    A Professional Law Corporation
4   6033 W. Century Boulevard, Suite 500
    Los Angeles, CA 90045
5
    Telephone:  (310) 981-2000
6   Facsimile:  (310) 337-0837

7   Attorneys for Defendants
    CITY OF BARSTOW, HECTOR
8   RODRIGUEZ, CALEB LEE
    GIBSON, RUDY ALCANTARA
9   and MICHAEL P. HUNTER

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  RAY WARREN,                          Case No.  EDCV 08-0405-DDD (OPx)

14              Plaintiff,
                                         **DECLARATION OF ANITA**
15         v.                            **HAMILTON IN SUPPORT OF**
                                         **DEFENDANTS' MOTION FOR**
16  CITY OF BARTSTOW, HECTOR             **SUMMARY JUDGMENT**
    RODRIGUEZ, in his capacity as the
17  City Manager for the City of Barstow, [Fed. R. Civ. P. 56]
    CALEB LEE GIBSON, individually
18  and in his capacity as Chief of Police
    for the City of Barstow; RUDY
19  ALCANTARA individually and in his
    capacity as Lieutenant for the City of
20  Barstow Police Department;
    MICHAEL P. HUNTER, individually
21  and in his capacity as Sergeant for the
    City of Barstow; and DOES 1 through
22  9 inclusive,

23
                Defendants.
24

25

26

27

28

    426773.1 BA080-024                         DECLARATION OF ANITA HAMILTON
                                                    IN SUPPORT OF MOTION
                                                  FOR SUMMARY JUDGMENT

019

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# DECLARATION OF ANITA HAMILTON

I, Anita Hamilton, declare that I have personal knowledge of the following facts and if called as a witness I would competently testify thereto:

1.    I have been employed by the City of Barstow since September 27, 1999. My first position was as a Personnel Analyst in the City's Human Resources Department. The title of my position changed in December 2008 to Senior Personnel Analyst which is my current position. Although my title changed, my job duties remained the same. My job duties have and currently include overseeing and administering day-to-day human resources functions and programs such as recruitment, training, staff development, maintaining personnel files, job development, performance evaluations, benefits, compensation and worker's compensation. I currently report to the City Manager, Richard Rowe.

2.    I have reviewed the personnel files of the City's police officers and they show that since 2000, five currently employed officers were promoted after they served as a School Resources Officer. The personnel files show that three officers promoted to the rank of corporal, and two officers promoted to the rank of Sergeant after serving as a School Resources Officer.

3.    Attached as Exhibit "9" to the Appendix of Evidence in Support of the Motion for Summary Judgment ("Appendix of Evidence") is a true and correct copy of Police Officer Ray Warren's Performance Appraisal Report for the period April 1, 2005 to April 1, 2006 that was contained in his personnel file.

4.    Attached as Exhibit "10" to the Appendix of Evidence in Support of the Motion for Summary Judgment ("Appendix of Evidence") is a true and correct copy of Officer Warren's Performance Appraisal Report for the period October 2004 to October 2005 that was contained in his personnel file.

5.    Attached as Exhibit "11" to the Appendix of Evidence is a true and correct copy of Officer Warren's Performance Appraisal Report for the period April 1, 2001 to April 1, 2004 that was contained in his personnel file.

6.     Attached as Exhibit "12" to the Appendix of Evidence is a true and correct copy of a Memorandum dated December 4, 2006 from Sergeant Keith Libby to Officer Warren that was contained in Officer Warren's personnel file.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this _16th_ day of July, 2010, at Barstow, California.

Anita Hamilton

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

DECLARATION OF ANITA HAMILTON
IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

021

# DECLARATION OF ELIZABETH T. ARCE

1   Mark H. Meyerhoff, Bar No. 180414
    mmeyerhoff@lcwlegal.com
2   Elizabeth T. Arce, Bar No. 216687
    earce@lcwlegal.com
3   LIEBERT CASSIDY WHITMORE
    A Professional Law Corporation
4   6033 W. Century Boulevard, Suite 500
    Los Angeles, CA  90045
5
    Telephone:  (310) 981-2000
6   Facsimile:   (310) 337-0837
7   Attorneys for Defendants
    CITY OF BARSTOW, HECTOR
8   RODRIGUEZ, CALEB LEE
    GIBSON, RUDY ALCANTARA
9   and MICHAEL P. HUNTER

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  RAY WARREN,                          Case No.  EDCV 08-0405-DDD (OPx)

14              Plaintiff,               **DECLARATION OF ELIZABETH
                                         T. ARCE IN SUPPORT OF
15        v.                             DEFENDANTS' MOTION FOR
                                         SUMMARY JUDGMENT**
16  CITY OF BARTSTOW, HECTOR
    RODRIGUEZ, in his capacity as the    [Fed. R. Civ. P. 56]
17  City Manager for the City of Barstow,
    CALEB LEE GIBSON, individually
18  and in his capacity as Chief of Police
    for the City of Barstow; RUDY
19  ALCANTARA individually and in his
    capacity as Lieutenant for the City of
20  Barstow Police Department;
    MICHAEL P. HUNTER, individually
21  and in his capacity as Sergeant for the
    City of Barstow; and DOES 1 through
22  9 inclusive,
23
                Defendants.
24
25
26
27
28
    421255.1 BA080-024

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1    **DECLARATION OF ELIZABETH T. ARCE**

2    **I**, Elizabeth T. Arce declare that I am an attorney at law duly licensed to

3    practice before all the courts in the State of California, and am specifically admitted

4    to practice before the United States District Court for the Central District of

5    California. I am an associate with the firm of Liebert Cassidy Whitmore, attorneys

6    of record for Defendants City of Barstow, Hector Rodriguez, Caleb Lee Gibson,

7    Rudolph Alcantara and Michael P. Hunter and I make this declaration based on my

8    own personal knowledge.

9        1.    Attached as Exhibit "13" to the Appendix of Evidence in Support of

10   the Motion for Summary Judgment ("Appendix of Evidence") is a true and correct

11   copy of Plaintiff Ray Warren's ("Plaintiff") Response to Defendants' Request for

12   Production of Documents, Set One which was served on my office on December

13   11, 2009.

14       2.    Attached as Exhibit "14" to the Appendix of Evidence is a true and

15   correct copy of an e-mail dated November 1, 2006 from Plaintiff to Eileen Martin.

16   Plaintiff authenticated this document during his deposition which was taken on

17   January 19, 2010. (*See* page 60:3-15 to Plaintiff's deposition attached as Exhibit

18   "17" to the Appendix of Evidence.)

19       3.    Attached as Exhibit "15" to the Appendix of Evidence is a true and

20   correct copy of an e-mail dated January 5, 2007 from Plaintiff to Rudy Alcantara.

21   Plaintiff authenticated this document during his deposition which was taken on

22   January 19, 2010. (*See* page 176:5-13 to Plaintiff's deposition attached as Exhibit

23   "17" to the Appendix of Evidence.)

24       4.    Attached as Exhibit "16" to the Appendix of Evidence is a true and

25   correct copy of an e-mail dated December 3, 2006 from Plaintiff to

26   moeanray@verizon.net and Eileen Martin. Plaintiff authenticated this document

27   during his deposition which was taken on January 19, 2010. (*See* page 266:12-24

28   to Plaintiff's deposition attached as Exhibit "17" to the Appendix of Evidence.)

421255.1 BA080-024                    - 2 -

024

1    5.    Attached as Exhibit "17" to the Appendix of Evidence is a true and

2    correct copy of excerpted pages of the deposition of Ray Warren taken in this case

3    on January 19, 2010.

4    6.    Attached as Exhibit "18" to the Appendix of Evidence is a true and

5    correct copy of excerpted pages of the deposition of Caleb Lee Gibson taken in this

6    case on March 10, 2010.

7    7.    Attached as Exhibit "19" to the Appendix of Evidence is a true and

8    correct copy of excerpted pages of the deposition of Rudy Alcantara taken in this

9    case on March 11, 2010.

10   8.    On June 21, 2010 at approximately 2:57 p.m., my office e-mailed

11   Plaintiff's counsel, Russell Perry, a letter I prepared regarding Defendants' intent to

12   file a motion for summary judgment regarding Plaintiff's sole remaining claim for

13   violation of 42 U.S.C. §1983.  The letter was also mailed to Plaintiff's counsel.  A

14   true and correct copy of my meet and confer letter is attached hereto as Exhibit

15   "20."  Although my letter articulated the grounds for the motion, it also invited

16   Plaintiff's counsel to contact me if he wished to further discuss the motion.

17   However, Mr. Perry did not contact me.

18       I declare under penalty of perjury under the laws of the United States of

19   America and the State of California that the foregoing is true and correct.

20       Executed this _11th_ day of July, 2010, at Los Angeles California.

21

22

23   _____

24                                    Elizabeth T. Arce

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# DECLARATION OF RUDY ALCANTARA

1   Mark H. Meyerhoff, Bar No. 180414
    mmeyerhoff@lcwlegal.com
2   Elizabeth T. Arce, Bar No. 216687
    earce@lcwlegal.com
3   LIEBERT CASSIDY WHITMORE
    A Professional Law Corporation
4   6033 W. Century Boulevard, Suite 500
    Los Angeles, CA  90045
5
    Telephone:  (310) 981-2000
6   Facsimile:   (310) 337-0837

7   Attorneys for Defendants
    CITY OF BARSTOW, HECTOR
8   RODRIGUEZ, CALEB LEE
    GIBSON, RUDY ALCANTARA
9   and MICHAEL P. HUNTER

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

13  RAY WARREN,                          Case No.  EDCV 08-0405-DDD (OPx)

14              Plaintiff,               **DECLARATION OF RUDY**
                                         **ALCANTARA IN SUPPORT OF**
15       v.                              **DEFENDANTS' MOTION FOR**
                                         **SUMMARY JUDGMENT**
16  CITY OF BARTSTOW, HECTOR
    RODRIGUEZ, in his capacity as the    [Fed. R. Civ. P. 56]
17  City Manager for the City of Barstow,
    CALEB LEE GIBSON, individually
18  and in his capacity as Chief of Police
    for the City of Barstow; RUDY
19  ALCANTARA individually and in his
    capacity as Lieutenant for the City of
20  Barstow Police Department;
    MICHAEL P. HUNTER, individually
21  and in his capacity as Sergeant for the
    City of Barstow; and DOES 1 through
22  9 inclusive,

23

24              Defendants.

25

26

27

28

    426985.1 BA080-024                   DECLARATION OF RUDY ALCANTARA
                                         IN SUPPORT OF MOTION
                                         FOR SUMMARY JUDGMENT

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

## DECLARATION OF RUDY ALCANTARA

I, Rudy Alcantara, declare that I have personal knowledge of the following facts and if called as a witness I would competently testify thereto:

1.    I was a police officer with the City of Barstow's ("City") Police Department ("Department"). I worked for the City for approximately 30 years until my retirement in December 2007. I was promoted to Lieutenant in or about 2004. Shortly before my retirement, I served as Interim Chief of the Department for a few months. If called as a witness, I could and would competently testify to all facts herein within my personal knowledge.

2.    Ray Warren was a police officer in the Department. On January 17, 2007, Sergeant Keith Libby and I met with Officer Warren to discuss his job performance as a School Resources Officer ("SRO") and to discuss an oral reprimand Sergeant Libby intended to give Officer Warren for showing up to work on a day he was told not to appear. Before this meeting occurred, I did not know Officer Warren assisted Officer Cheran Jackson with making a harassment complaint against another fellow officer to the Human Resources Department. The first time that I learned of Officer Warren's involvement with Officer Jackson's complaint was long after the January 17th meeting.

3.    I am aware that Officer Warren served on the BPOA Board as Vice President and President. I believe Officer Warren was President from approximately 2005 to approximately January 2007. I served on the BPOA Board in approximately the late 1970s or early 1980s. I felt that Officer Warren, like any other BPOA President, has an obligation and right to serve the BPOA members. I understand that Officer Warren filed a lawsuit claiming that I retaliated against him because of the positions he took as President of the BPOA. However, I never took any action against Officer Warren for anything he said or did as President of the BPOA.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

028

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

4.      I asked Officer Warren for his military schedule because I needed to provide proof his military leave to the City's Finance Department so that they could justify paying his salary while on leave. I have also asked other police officers in the Department for their military schedules and have been provided with this information. My request was not based on anything Officer Warren said as President of the BPOA.

5.      In or about November 2006, I received a ride-along request from Roger Martin who was a resident of the City. I told Mr. Martin that the timing of his request was inconvenient because I was dealing with other issues at that time. I told Mr. Martin to call me back some other time but he never did. My request that Mr. Martin call me back some other time was not based on anything Officer Warren said as President of the BPOA.

6.      I also removed Officer Warren as an Officer-In-Charge ("OIC") because I observed an accident scene that I believed was not being controlled by the police officers present. Officer Warren was the OIC at the scene. As the OIC, I felt it was Officer Warren's responsibility to direct officers under his supervision to control the scene. Since I felt Officer Warren failed to sufficiently supervise, I told Sergeant Albert Ramirez that I did not want Officer Warren serving as OIC. Officer Warren was also removed as OIC because he did not receive a an "exceeds standards" or "outstanding" rating on his last performance evaluation pursuant to Section 124 of the Department's Manual of Policies and Procedures. My removal of Officer Warren as an OIC was not based on anything Officer Warren said as President of the BPOA.

7.      With respect to Officer Warren's reassignment to the SRO position, I recall that Lieutenant Richard Harpole suggested Officer Warren for the position. Although I did not make the final decision to appoint Officer Warren to the SRO position, I thought Lieutenant Harpole's suggestion was a good one because I

1   thought Officer Warren possessed the qualities and personality to succeed in that

2   position. I felt that the SRO assignment would give Officer Warren new challenges

3   to broaden his experience which would help him promote. My support of Officer

4   Warren's reassignment to the SRO position was not based on anything Officer

5   Warren said as President of the BPOA.

6       I declare under penalty of perjury under the laws of the United States of

7   America and the State of California that the foregoing is true and correct.

8       Executed this _____ day of July, 2010, at Barstow, California.

9

10

11

12                                      Rudy Alcantara

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

426985.1 BA080-024                    - 3 -         DECLARATION OF RUDY ALCANTARA
                                                    IN SUPPORT OF MOTION
                                                    FOR SUMMARY JUDGMENT

030

Exhibit 1



**THE CITY OF**

**BARSTOW**

**CROSSROADS OF OPPORTUNITY**

TO:        Ray Warren

FROM:      Hector Rodriguez, City Manager

DATE:      May 8, 2007

RE:        Decision to Support Recommendation to Terminate Employment

On April 23, 2007, you provided me with a pre-disciplinary response to Police Chief Caleb L. Gibson's recommendation that you be terminated from your employment as a Police Officer. You were represented by legal counsel.

I have carefully reviewed the notices previously given to you by Chief Gibson and the supporting documentation. I have taken into account the response you provided to me on April 23, 2007. I am supporting the Police Chief's recommendation. Your employment is terminated effective May 8, 2007. My decision is based upon the charges and facts set out in the March 28, 2007 Notice of Dismissal issued by Chief Gibson.

Article 46 DISCIPLINE of the police MOU provides for you to appeal this dismissal. A copy of Article 46 is attached. If you desire to appeal, you must comply with the procedures set out in Article 46. Failure to timely appeal pursuant to Article 46 shall be considered a waiver of the right to appeal.

Enclosure: Article 46 of the Police Memorandum of Understanding

Cc: Lackie & Dammeier – John Bakhit

220160.1 BA080-017   220 East Mountain View Street, Suite A • Barstow, California 92311-2888
Ph. 760 256 2531 • Fax 760 256 1750

**Exhibit 1**

00001

032

Exhibit 2

REPORT OF INVESTIGATION – IA 2007-001
INVOLVED OFFICER: RAY WARREN

# REPORT OF INVESTIGATION

IA 2007-001

**COMPLAINT:**      RECORDING CONFIDENTIAL COMMUNICATIONS WITHOUT CONSENT OF INVOLVED PARTIES – PC 632

**INVOLVED OFFICER:**      OFFICER RAY WARREN

**COMPLAINING PARTY:**      LT. RUDY ALCANTARA

**DATE OF INCIDENT:**      JANUARY 17, 2007

**LOCATION OF INCIDENT:**      BARSTOW POLICE DEPARTMENT 220 E. MT VIEW, SUITE B BARSTOW, CA 92311

**INVESTIGATING OFFICER:**      LT RICH HARPOLE

**WITNESSES INTERVIEWED:**      LT RUDY ALCANTARA SGT KEITH LIBBY EILEEN MARTIN

## BASIS FOR INVESTIGATION:

At about 11:59 hours, January 17, 2007, I received a phone call from LT Alcantara. Alcantara told me that he had just had a meeting with Ray Warren and Sgt Libby concerning a letter of counseling. Alcantara thought he might have seen Warren in possession of a recording device and then confronted him and asked if Warren recorded their meeting. Warren admitted that he did and that he was still recording. I told Alcantara that recording private conversation without everyone's consent is a crime and that he needed to seize the recording as evidence.

At about 12:13, January 17, 2007 I received a call from Chief Gibson relating same information that I had received from Lt Alcantara. Chief Gibson also told me that he wanted me to handle the investigation. Before responding to the PD I reviewed California Penal Code § 362.

PL'S EXHIBIT 21 FOR I.D.
DATE: 3-10-10
WITNESS: GIBSON
BRANDY L. WILLIAMS, CA USR #11084

REPORT OF INVESTIGATION – IA 2007-001                    Page 2 of 7 pages
INVOLVED OFFICER: RAY WARREN

## ARRIVAL AT STATION/CONTACT WITH OFFICER WARREN

When I arrived at the Police Department I went to the watch commander's office where I found Officer Libby, Chief Gibson, Lt Alcantara, and Officer Warren. When I entered the room the Chief told everyone that I was conducting the investigation into the matter and he left a moment later. Officer Warren was talking on a cell phone and based on Warren's side of the conversation I believed he was talking to his lawyer. Warren asked if the recording device was being seized and I said "yes" and reached out for it. Warren opened his hand and released the recording device which was still recording. Warren told me there were two conversations of a personal nature that he would like to keep private, and I told him that it might be better if he did not say anything to me right then. I had Warren explain to me how to turn off the recording device.

We (Warren, Alcantara, and Libby) then went to Warren's locker in the men's locker room, where I conducted a search in of the locker in Officer Warren's presence. During the locker search I seized nine mini-cassette tapes. A few moments later we returned to the Sgt's office where I provided Warren with a receipt for the tapes and the digital recording device. I told Warren that he was relieve of duty and placed on administrative leave and that I would send him a registered letter to inform him when to come in for his interview. I also ordered Warren not to discuss the matter with anyone except his attorney.

## CRIMINAL INVESTIGATION

Because this incident involved an alleged violation of both department policies and state laws, I assigned Sgt Hunter to conduct the criminal investigation while I conducted the administrative investigation. Sgt Hunter and I discussed the case and agreed that a search warrant would be needed to review the contents of Warren's recording device. Sgt Hunter documented the criminal investigation under CR 07-0547, which is attached to this report.

On 1/23/07 at about 11:15 hours, Hunter came to my office and told me that Judge John Gibson had authorized the search warrant. I released the nine mini-cassettes to Hunter and told him that before I released the digital recorder I wanted to transfer the recordings to a CD to preserve them in the event of device failure.

## REVIEW OF WARREN'S DIGITAL RECORDINGS

On 1/23/07 at about 15:27, I transferred the recording from the Warren's device to my recorder which had a USB connector. Because the contents of Officer Warren's digital recorder were searched under the authority of a search warrant I transferred all of the recordings I found on the device to my computer for preservation. Once I was able to transfer the recordings I made two copies, one for my use in this administrative investigation and one for Sgt Hunter's use in the criminal investigation.

21-2

## Exhibit 2 - 2

035

REPORT OF INVESTIGATION -- IA 2007-001                     Page 3 of 7 pages
INVOLVED OFFICER: RAY WARREN

I found that the device contained several separate recordings. A couple of recordings at
the beginning were of a personal nature and did not appear to be related to this
investigation. There were a couple of recordings related to calls for service and crime
issues Officer Warren handled and were not a focus of this investigation. I found that the
recording of the meeting between Lt Alcantara, Officer Libby, and Officer Warren started
at about 11 minutes into the recording and ended at about 33 minutes and 57 seconds into
the total recording. Some portions of this recording were muffled and had noise on it that
prevented those portions of the recording from being clearly understood. These other
sounds and noise were consistent with objects being moved across the microphone of the
recorder. There was no introduction on this recording, no date or time was announced,
and there was no notice that the meeting was being recorded nor did Officer Warren
make a request for consent to record the meeting.

The next recording begins at about 34 minutes into the total recording and Lt Alcantara
can be heard asking what Officer Warren had he had in his possession and Lt Alcantara
asking Warren if he had recorded their conversation. During this conversation Officer
Warren acknowledged that he had recorded the conversations in Lt Alcantara's office
earlier.

Please see transcript/recording for additional details.


## INTERVIEW WITH SGT KEITH LIBBY

*At the conclusion of the incident on January 17, 2007, I directed Sgt Libby to prepare a
memorandum to memorialize his knowledge of the incident at that time. See attached.*

At about 10:05, January 31, 2007, I interview Sgt Libby in an interview room at the
Barstow Police Annex. Sgt Libby told me that he had participated in a meeting with Lt
Alcantara and Officer Warren on January 17, 2007 in Lt Alcantara's office. Libby latter
learned that Officer Warren had recorded the meeting without his (Libby's) knowledge
and consent.

Please see attached transcript/recording for additional details.


## INTERVIEW WITH LT RUDY ALCANTARA

*At the conclusion of the incident on January 17, 2007, I directed Lt Alcantara to prepare
a memorandum to memorialize his knowledge of the incident at that time. See attached.*

At about 14:30 hours, January 31, 2007, I conducted an interview with Lt Alcantara in an
interview room at the Barstow Police Department Annex. Lt Alcantara told me that he
and Sgt Libby met with Officer Warren in his office. Lt Alcantara told me that the
meeting was to discuss with Officer Warren about his recent assignment to the SRO

21-3

REPORT OF INVESTIGATION – IA 2007-001                    Page 4 of 7 pages
INVOLVED OFFICER: RAY WARREN

position and performance issues. This was a meeting in the normal course of business and was not intended to form the basis discipline. Lt Alcantara said that the office door was closed and that he believed the conversation was confidential and private. Lt Alcantara said that as the meeting was breaking up he noticed that Officer Warren had something in his hand that could have been a recording device. After Warren left the office, Lt Alcantara asked Sgt Libby if he had seen the device and if he knew if Officer Warren had recorded the interview. Alcantara confronted Warren when he returned form City Hall and asked if he had recorded their conversation. Warren said that he was recording at that moment and he had reorded the earlier meeting. 

See transcript / recording for additional details of this interview.

### INTERVIEW WITH EILEEN MARTIN

On February 1, 2007, Sgt Hunter interviewed Eileen Martin as part of the criminal investigation (CR 07-0547). Martin told Hunter that on January 17, 2007 Officer Warren did go to her office and told her that he had recorded his meeting with Sgt Libby and Lt Alcantara and that he played a portion of the tape for her. Martin described the recording as "poor quality" and that she could not hear all of the conversation.

Please see Sgt Hunter's report for additional details of this interview.

### INTERVIEW WITH OFFICER RAY WARREN

On February 14, 2007, at about 13:30 hours, I interviewed Officer Ray Warren at the Police Department Annex. Warren was accompanied by an attorney Mr. Steven J. Brock of the firm Lackie & Dammeier.

Before I conducted the interview I gave Mr. Brock the Barstow Police Department Pre-Internal Investigation Statement form, which he and Officer Warren completed. Officer Warren signed the form and then I signed the form. Once the interview began, I briefly reviewed the form and pointed out that Officer Warren had indicated that he was not willing to waive his Miranda rights. I asked Officer Warren if that was correct and he indicated that it was. I then read the next portion of the form and ordered Officer Warren to answer questions and cooperate with the investigation. Please see the completed form which is attached.

I asked Warren a series of questions that were prepared before the interview. Warren acknowledged that he had recorded the meeting with Lt Alcantara and Sgt Libby in Alcantara's office on January 17, 2007. Warren stated that he had held the recorder in his hands, resting on his lap. He also acknowledged that he did not obtain Lt Alcantara's or Sgt Libby's consent before recording the conversation, and that he did not inform them that the conversation had been reorded until he after he left the meeting went to City Hall and then returned to the PD. Warren also admitted that while he was at City Hall he played the tape for the HR Director, Eileen Martin.

21-4

**Exhibit 2 - 4**

037

REPORT OF INVI...  'IGATION -- IA 2007-001                    Page 5 of 7 pages
INVOLVED OFFICER: RAY WARREN

The defense theory advanced by Mr. Brook was that the meeting in Lt Alcantara's office was a discipline meeting, that Officer Warren was entitled to record the conversation under the authority of Government Code 3303(g) because Officer Warren received a letter of reprimand and because Warren was asked questions about his performance. Mr. Brook objected to several questions during the interview and after I allowed him to express his objections on the record before I ordered Officer Warren to answer each question.

Please see transcript/recording of this interview for additional details.

At the conclusion of this interview I directed Officer Warren to surrender his badges, ID card, and weapon to the on-duty watch commander.

## INSPECTION OF TRAINING RECORDS:

On February 21, 2007, I conducted an inspection of Officer Warren's training file. In the file I found two documents indicating that Officer Warren had received training concerning the proper use of tape recorders.

The first document indicated that Sgt Hibbetts and Cpl Schafer conducted roll call training on April 25, 1996 concerning "Tape recorder training-Memo from L-5", with notations that P45 and P64 were the officers present for that training. Sgt Hibbetts retired from our department a few years before 2000, Cpl Schafer (later Sgt Schafer) is no longer employed with our agency. "L-5" was Lt James Lindley who retired from our department in 2000 now lives in Kern County, P64 was Officer David Alexander who now works for the San Bernardino County Sheriff's Office and P45 was the call signed assigned to Officer Warren at that time.

The second document is three pages, a cover with instructions to the watch commanders and two pages with analysis and direction from Lt Lindley concerning the laws governing the use of tape recorders. This is the document that was the basis of the training provided to Officer Warren on April 25, 1996. This document was not in the training file but was instead recovered from the files in the Chief's office.

The final document is a memorandum dated July 09, 2004, from Chief Gibson with instructions to use tape recorders when appropriate when dealing with the public and direction to the watch commanders to conduct roll-call training on the subject. The handwritten notes at the bottom of the memorandum were made by Sgt Albert Ramirez to document who he provided training to on July 10, 2004—among the names of those Sgt Ramirez provided the training to was Officer Ramon Warren.

21-5

## Exhibit 2 - 5

REPORT OF INVESTIGATION – IA 2007-001
INVOLVED OFFICER: RAY WARREN

## INVESTIGATIVE CONCLUSIONS:

1. Officer Warren was on duty on January 17, 2007.
2. Lt Alcantara called Officer Warren into his office for an impromptu meeting, that also included Sgt Libby, concerning issues related to Warren's assignment and work performance; however, this was a routine counseling meeting in the normal course of duty as described in Government Code § 3303(i), and was not an investigation or interrogation that could reasonably be viewed as leading to punitive action described in Government Code § 3303.
3. During this meeting the door to Lt Alcantara's office was closed.
4. Lt Alcantara believed that the meeting was confidential in nature, that no one would be listening in on the conversation and that it was not being recorded.
5. Sgt Libby believed that the meeting was confidential in nature, that no one would be listening in on the conversation and that it was not being recorded.
6. Officer Warren acknowledged that it was reasonable for others to believe the meeting in Lt Alcantara's office was confidential and that no one was listening in on the conversation.
7. During this meeting Sgt Libby gave a letter of reprimand to Officer Warren which was prepared in advance of the meeting and was not based on anything said at the meeting. The reprimand was only presented for Officer Warren's review and signature.
8. During this meeting Officer Warren possessed a digital recording device and intentionally placed it in the record mode to record the meeting.
9. Officer Warren did not give notice to Lt Alcantara or Sgt Libby that he intended to record the meeting and did not seek their consent to record the meeting as required by Penal Code § 632. Additionally, Warren held the recorder in his hands, resting on his lap, in a manner that did not make it obvious that he was recording the meeting.
10. Warren inferred that since he held the recorder in his hand Lt Alcantara and Sgt Libby should have seen the recorder and knew that they were being recorded. Knowledge of the presence of a recorder and consent are two different issues. Penal code § 632 requires "consent" of all parties. See *Coulter v. Bank of America* 28 Cal.App 4th 923.
11. After the meeting was concluded Officer Warren played a portion of the recording for the City HR Director, Eileen Martin. While Penal Code §.632 does not have an element concerning release of the recording to a third party, Martin is a witness who is aware that Warren possessed the recording.
12. Lt Alcantara later confronted Officer Warren and asked if he had recorded the earlier meeting. Warren acknowledged that he was recording their conversation at that moment as well as having recorded the earlier meeting in Lt Alcantara's office.
13. In his interview for this investigation, Officer Warren admitted that he had recorded the meeting with Lt Alcantara and Sgt Libby without securing their consent to make the recording.

71-6

## Exhibit 2 - 6

REPORT OF INVESTIGATION – IA 2007-001                    Page 7 of 7 pages
INVOLVED OFFICER: RAY WARREN

14.    Officer Warren received in-service training at least twice in the past
       concerning the proper use of audio recording devices.

15.    Officer Warren, through his attorney, asserted that he had a right under
       Government Code § 3303(g) to record the meeting because in his view it was
       an "interrogation". The facts in this case do not support that position.

       a.    Officer Warren has been the focus of internal affairs investigations and
             interrogations in the past, the most recent occurring February 2006, and he
             is well acquainted with the process.

       b.    It is the practice of the Barstow Police Department, as required by
             POBAR, to give an officer advance notice of investigations, in writing,
             identifying who is conducting the investigation and the nature of the
             complaint or issue being investigated as well as providing the officer
             ample time to consult with an attorney and have a representative present
             during the interview. In such an interview Government Code § 3303(g)
             allows the officer to record the formal compelled interview conducted as
             part of an investigation that may result in punitive action.

       c.    The facts in this case show that the process for conducting an
             interview/interrogation as described in Government Code § 3303 did not
             exist and that this recorded conversation occurred during an impromptu
             meeting during the regular course of duty (as defined in Government Code
             § 3303(i)) which was for the purpose of discussing work assignment and
             performance issues and was not designed to form the basis of any
             disciplinary action.

16.    Officer Warren committed the offense of recording confidential
       communications without consent of the involved parties, a violation of
       California Penal Code § 632, a felony, while on duty. Committing a felony on
       duty is also a violation of Department policy 202, Section III, para 5m,
       *Criminal, dishonest, infamous, or notoriously disgraceful conduct adversely
       affecting the employee/employer relationship.*

21-7

**Exhibit 2 - 7**

040

# Exhibit 3

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL:          *POLICE*

**Subject:**   *REPORT ACCOUNTABILITY*

## INTRODUCTION

The Barstow Police Department requires that all reports prepared by members of the Department be accounted for from the time of assignment of the report number to the conclusion of the investigative process and entry into the record filing system. To consistently locate any report at any time to obtain details or to update, supplement or correct necessary information, the Department has adopted the following procedure.

## PROCEDURE

1.  Assignment of Report Numbers

    a.  To be entered in the C.R. Log and Booking Log, as applicable, by the Dispatcher at the time the assigned Officer requests a report number.

    b.  The following information regarding the incident or offense shall be entered in the appropriate log.

        (1) Report number (unless log is prenumbered)
        (2) Name of victim/reporting person/arrested person, as applicable
        (3) Type of offense or incident, as applicable
        (4) Location of offense
        (5) Date
        (6) Name of assigned officer
        (7) Initials of Dispatcher assigning the call

2.  Officer Completion of Assigned Report or Incident

    a.  Reports shall be completed during the normal tour of assigned duty. Exceptions must be approved by the Watch Commander in advance.

    b.  All reports shall normally be completed on a daily basis. Any exception to this procedure shall only be with the prior approval of the shift Sergeant. In all cases, Officers will have <u>all</u> reports completed prior to going on days off, vacation, schools, or shift changes.

Reference:

| Effective Date | Revision No. | Exhibit 3 - 1 | Section |
|---|---|---|---|
| March 01, 1988 | | Page 1 of 4 | 1006 |

042

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL:          POLICE

Subject:    REPORT ACCOUNTABILITY - continued

    c.   All felony crimes and those misdemeanors that must be reported to the Department of Justice or other outside agency (i.e., school district, Child Protective Services, Alcoholic Beverage Control) shall be documented on a CR-1 form.  There shall be no exception without prior approval of the Watch Commander.

    d.   Watch Commanders shall keep current on officers report activity, and regulate manpower in such a way as to allow various officers time to complete reports.

3.   Report Review Process

    a.   All initial reports, including bookings, will be reviewed and approved by the Watch Commander within 24 hours of the time a report is assigned.  In the event a Watch Commander is unavailable to approve reports originating on his shift, the Watch Commander of the next succeeding shift may approve such reports as to form.  However, this shall not relieve the Watch Commander of the shift upon which the report originated from approving of the content of each report.

    b.   The C.R. and Booking Logs will be reviewed and updated daily by each Watch Commander.

    c.   The C.R. and Booking Logs will contain:

       (1)  Date approved by supervisor
       (2)  Initials of approving supervisor

    d.   All approved reports will be forwarded to Records personnel for completion of the report process.

4.   Records Office Functions

    a.   All reports received in the Records Office will be logged in the C.R. and Booking Logs as applicable.

    b.   The appropriate log book will show the following information:

       (1)  Date processed by Records
       (2)  Initials of the clerk logging the report

Reference:

| Effective Date | Revision No. | **Exhibit 3 - 2** Section | |
|---|---|---|---|
| March 01, 1988 | | Page _2_ of _4_ | 1006 |

043

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL:     POLICE

Subject:     REPORT ACCOUNTABILITY – continued

5.   General

   a.   All reports will be listed in sequential order

   b.   If 24 hours elapses between the time that a report number is issued and the report is not received by the Watch Commander, or the Records Office, the person noting the omission of the report will review the accountability records in order to locate the missing report.

   c.   The Watch Commander on duty, upon noting or being notified of a missing report, shall have the report completed as soon as possible.

   d.   The information contained in police reports is vital to investigating officers and must be promptly processed for proper distribution.  Every person in the organization is responsible for submitting reports in a timely fashion and following this procedure which is designed to ensure availability of information.

## CITATIONS

1.   Each officer, including Community Service Officers, shall forward both the court copy and the Departmental copy of all citations written during each shift to the Watch Commander at the conclusion of the shift.

2.   Within 24 hours following receipt of the aforementioned citations, each Watch Commander shall review each citation issued by his shift for accuracy, shall correct inaccurate citations as appropriate, and shall initial each citation.

3.   Each Watch Commander shall initiate a Notice of Correction via the issuing officer for each incorrect citation submitted for approval. NOTE:  It is not the responsibility of the clerical staff to check and correct work initiated and approved by trained Police Officers.

4.   Approved citations shall be forwarded to the Records Division by each Watch Commander as soon as practical following the end of each shift but in no case more than 24 hours after the close of the shift upon which the citation was issued.

Reference:

| Effective Date | Revision No. | **Exhibit 3 - 3** Section | |
|---|---|---|---|
| March 01, 1988 | | Page 3 of 4 | 1006 |

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL:                POLICE

Subject:        *REPORT ACCOUNTABILITY - continued*

5.  Upon receipt of an approved citation, the Records Division shall record appropriate statistical data concerning the issuing officer and the violation cited.

6.  The court copy of each citation shall be forwarded by the Records Division to the Municipal Court Clerk five court days after the date of issuance.

7.  Officers are responsible for all citations assigned to them and shall be subject to monthly audit by the Record Division.

Reference:

| Effective Date | Revision No. | **Exhibit 3 - 4** | Section |
|---|---|---|---|
| March 01, 1988 | | Page  4  of  4 | 1006 |

045

# Exhibit 4

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL:

Subject: SPECIAL DUTY ASSIGNMENTS

## Intent

The purpose of this procedure is to establish qualifications, a selection process, and the length of assignment for special duty assignments.

## Special Duty Assignments

The following are currently recognized by the Barstow Police Department as special duty assignments:

1. Narcotics Task Force officer
2. SRO (School Resource) Officer
3. Mall Officer
4. K-9 Officer
5. SET   (Street Enforcement Team) Officer
6. Investigation Officer
7. SRT (Special Response Team) Officer
8. OIC

DEFENDANT'S
EXHIBIT NO.
FOR IDENTIFICATION
*waiver*
DATE 10/19/10

## Policy

Sworn members of the department interested in applying for any of the special duty assignments shall submit a memo of interest to the Chief of Police via the chain of command.  The memo should include the officer's experience and qualifications for the position sought. The officer should also indicate why s/he is interested in the assignment and why s/he should be selected. The Chief of Police will make the final decision based on all the information submitted and a review of the employee's personnel files.

In accepting these positions, it is understood that these assignments do not constitute a promotion as defined in the Barstow Municipal Code, the Personnel Policies, and Procedures of the City of Barstow, or elsewhere.  Thus there is no probationary period for these assignments; nor is there a vested right to the assignment.

Officers selected for a special duty assignment will remain in the assignment for the length of time indicated, unless otherwise removed by the Chief of Police.  The Chief of Police reserves the right

| Reference: | | | |
|---|---|---|---|
| Effective Date<br>10/22/03 | Revision No.<br>2 | 1 of 4 pages | Section 124 |

**Exhibit  4 - 1**

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL

Subject: SPECIAL DUTY ASSIGNMENTS

to modify or change this rotational schedule, or add/delete special assignments, based upon department and community needs.

| HINET officer | 3 years | Mail officer | 2 - 3 years |
| K-9 officer | 2 years minimum | SET officer | 2 - 3 years |
| Investigation officer | 3 - 4 years | SRT officer | Indefinite |
| SRO | 2 - 4 years | OIC | As needed |

## Qualifications

To qualify for a special assignment, officers shall meet the following standards:

OIC
- Not be on probation and have a minimum of four years patrol experience with two years at BPD
- Knowledge and application of community policing philosophy
- Demonstrated problem solving skills
- Recommendation of current supervisor
- Most recent annual appraisal overall rating of *Exceeds Standards* or better
- Demonstration of job knowledge through consistent superior performance of assigned duties
- Demonstration of support for department policies and priorities through performance of duty
- No record of disciplinary action, within six months of assignment, which would have a negative impact on job performance

Narcotics or SET
- Not be on probation and have a minimum of two years patrol experience
- Narcotic specific training such as Drug Abuse Recognition, basic drug identification, search warrant preparation or other training specifically related to narcotic enforcement
- Demonstrate application of learned skills through a high degree of street level narcotic enforcement in patrol assignment
- Knowledge and application of community policing philosophy

Reference:

| Effective Date | Revision No. | | |
|---|---|---|---|
| 10/22/03 | 2 | 2 of 4 pages | Section 124 |

7-D 00456

**Exhibit 4 - 2**

048

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL

Subject: SPECIAL DUTY ASSIGNMENTS

- Demonstrated problem solving skills
- Demonstration of job knowledge through consistent superior performance of assigned duties
- Most recent annual appraisal overall rating of *Exceeds Standards* or better
- Recommendation of current supervisor
- No record of disciplinary action, within six months of assignment, which would have a negative impact on job performance

## K-9
- Not be on probation and have a minimum of 18 months patrol experience
- Knowledge and application of community policing philosophy
- Recommendation of current supervisor
- Demonstration of job knowledge through consistent superior performance of assigned duties
- Most recent annual appraisal overall rating of *Exceeds Standards* or better
- No record of disciplinary action, within six months of assignment, which would have a negative impact on job performance

## Mail officer
- Not be on probation and have a minimum of 18 months patrol experience
- Knowledge and application of community policing philosophy
- Demonstrated problem solving skills
- Demonstration of job knowledge through consistent superior performance of assigned duties
- Recommendation of current supervisor
- Most recent annual appraisal overall rating of *Meets Standards* or better
- No record of disciplinary action, within six months of assignment, which would have a negative impact on job performance

## Investigations Bureau
- Not be on probation and have a minimum of three years patrol experience
- Training in the area of search warrant preparation, basic investigation activity, etc.
- Demonstration of ability to conduct complex investigation as evaluated by review of work product

Reference:

| Effective Date 10/22/03 | Revision No. 2 | 3 of 4 pages | Section 124 |
|---|---|---|---|

$q$- D 00457

**Exhibit 4 - 3**

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL:

Subject: SPECIAL DUTY ASSIGNMENTS

- Knowledge and application of community policing philosophy
- Demonstrated problem solving skills
- Demonstration of job knowledge through consistent superior performance of assigned duties
- Recommendation of current supervisor
- Most recent annual appraisal overall rating of *Exceeds Standards* or better
- No record of disciplinary action, within six months of assignment, which would have a negative impact on job performance

## SRT
- Not be on probation and have a minimum of two years patrol experience
- Demonstrate ability to work well in a team environment
- Knowledge and application of community policing philosophy
- Demonstrated problem solving skills
- Demonstration of job knowledge through consistent superior performance of assigned duties
- Recommendation of current supervisor or SRT Sgt
- Most recent annual appraisal overall rating of *Exceeds Standards* or better
- No record of disciplinary action, within six months of assignment, which would have a negative impact on job performance

## SRO
- Not be on probation and have a minimum of 18 months patrol experience
- Demonstrate ability to work with and mentor young people
- Knowledge and application of community policing philosophy
- Demonstrated problem solving skills
- Demonstration of job knowledge through consistent superior performance of assigned duties
- Training in the area of school related crimes or associated issues
- Recommendation of current supervisor
- Most recent annual appraisal overall rating of *Meets Standards* or better
- No record of disciplinary action, within six months of assignment, which would have a negative impact on job performance

Reference:

| Effective Date 10/22/03 | Revision No. 2 | 4 of 4 pages | Section 124 |
|---|---|---|---|

9- D 00458

**Exhibit 4 - 4**

050

Exhibit 5

# CITY OF BARSTOW

CALIFORNIA

POLICE

## POLICIES and PROCEDURES MANUAL:
Subject: *PROCEDURE FOR RIDE ALONG*

### INTRODUCTION

The Ride-Along Program has been established for the purpose of acquainting City of Barstow employees, their families, and other persons with a particular interest with police work.

### COORDINATOR

The afternoon watch commander is the individual charged with the coordination and implementation of the Ride-Along Program. The watch commander is responsible for the processing of applicants and scheduling of the Ride-Along participants.

### GENERAL POLICY

A.  Only the following shall be allowed to take part in the Barstow Police Department's Ride Along Program.

　　1.  Non-sworn employees of the Barstow Police Department.

　　2.  Officers/employees of other law enforcement agencies.

　　3.  Students currently enrolled in a law enforcement college curriculum.

　　4.  Barstow Police Department employee applicants.

　　5.  Family members of Barstow Police Department sworn officers.

　　6.  Other individuals the Chief of Police may allow to take part in a Barstow Police Department Ride Along.

B.  All Ride-Alongs shall be scheduled at the discretion of the afternoon watch commander.

　　1.  Ride-Along waiver forms will be completed by all Ride-Along participants.

　　2.  All personnel are advised that there will be no unofficial Ride-Along participants allowed in police vehicles.

　　3.  No more than one participant may be scheduled for any one day.

| Reference: | | | | |
|---|---|---|---|---|
| Effective Date | Revision No. | | Section | |
| 10/07/94 | 1 | Page 1 of 3 | 329 | |

DEFENDANT'S EXHIBIT 5
EXHIBIT NO.
FOR IDENTIFICATION
DATE

**Exhibit 5 - 1**

052

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL:                    POLICE

Subject:
PROCEDURE FOR RIDE-ALONG (continued)

4. Ride-Alongs shall not be scheduled for the same person more than once a year without a valid reason.

C. Ride-Alongs shall generally be limited to four (4) hours in duration.

D. Ride-Alongs shall generally not be permitted after 2200 hours.

E. Friends and relatives of officers shall be assigned units for Ride-Along by the watch commander.

F. All Ride-Along participants shall be neatly dressed. Each watch commander shall use discretion as to what is or is not acceptable.

G. The minimum age for Ride-Along participation shall be fourteen (14) years of age. The Ride-Along between the age of fourteen (14) and seventeen (17) years inclusive shall have a signed waiver from their parents or guardian prior to the Ride-Along.

SAFETY OF RIDE-ALONG

A. Officers are reminded that Ride-Along participants are observers. Discretion should, therefore, be exercised in the types of situations exposed to the observer. Examples of this would be:

1. Discretion should be used when deciding to allow ride-alongs to remain in the police vehicle while transporting prisoner(s).

2. Ride-Along participants shall not be allowed in the jail during periods when booking is in progress.

3. If it becomes necessary for an officer with a Ride-Along to respond to an extremely hazardous situation, the Ride-Along shall be dropped off at a safe location prior to arrival at the scene.

4. The dispatcher shall be advised of the location of the Ride-Along when they are dropped off.

5. The Ride-Along shall be picked up as soon as they can be safety accommodated.

Reference:

| Effective Date | Revision No. | | Section | | |
|---|---|---|---|---|---|
| 10/07/94 | 1 | Page 2 of 3 | | 329 | 5-2 |

**Exhibit 5 - 2**

053

# CITY OF BARSTOW

CALIFORNIA

POLICIES and PROCEDURES MANUAL:  POLICE

Subject: *PROCEDURE FOR RIDE-ALONG – continued*

## EMPLOYEE RIDE-ALONG REQUEST PROCEDURE

*Eligible participants shall contact the afternoon watch commander 72
hours prior specifying the date, hour, and the officer they would like
to ride with. The watch commander reserves the right to waive the 72
hours requirement if extenuating circumstances exist and no undue
inconvenience to the Department will result. In addition, a completed
waiver form must be received prior to the ride-along.*

*The watch commander shall schedule the ride-along as requested, if
possible, and confirm the ride with the participant.*

*Non-sworn employees wishing to ride along with patrol must submit a
written request to their supervisor, indicating the date that the
employee wishes to ride. The supervisor will coordinate with the
responsible watch commander to arrange the ride-along and will then
notify the employee in writing that the ride-along has been approved.
No employee will be eligible for overtime compensation during
participation in the ride-along program.*

## BEFORE THE RIDE-ALONG

*Each ride-along participant shall present themselves at the dispatch
center at least 15 minutes prior to the scheduled ride and should be
instructed to ask to see the on-duty watch commander.*

*The watch commander shall then provide the participant with a copy of
the ride-along program rules and regulations and have the participant
read and initial it. At this time, the watch commander may assign the
participant an officer for the ride-along.*

*All ride-alongs begin and end at the Barstow Police Department. Ride-
along participants shall not be picked up or dropped off at any other
location. Participants are responsible for their own transportation to
and from the Police Department, even if the ride-along ends earlier than
originally scheduled.*

## TERMINATION OF RIDE-ALONG

*The ride-along may be terminated at any time by the participant, the
officer, or a supervisor. In this event, the participant shall be
returned as soon as practical to the Barstow Police Department.*

Reference:

| Effective Date | Revision No. | | Section | |
|---|---|---|---|---|
| 10/07/94 | 1 | Page 3 of 3 | 329 | 5-3 |

**Exhibit 5 - 3**

054

# Exhibit 6



# BARSTOW POLICE DEPARTMENT

Caleb L. Gibson, Chief of Police

220 E. Mt. View St., Suite B, Barstow, CA 92311-2889
(760) 256-3531 • Fax (760) 256-2215

**TO:**       Ray Warren, Police Officer

**FROM:**    Caleb L. Gibson, Chief of Police

**DATE:**    March 14, 2007

**SUBJECT:**   NOTICE OF INTENT TO DISMISS

---

The purpose of this NOTICE OF INTENT TO DISMISS is to provide you with notice of my recommendation to the City Manager that you shall be dismissed from your employment as a City of Barstow Police Officer. If your exercise of the Pre-Disciplinary Proceedings provided for by the applicable City resolution(s) does not result in a modification of the dismissal recommended by me, your dismissal shall be effective immediately after the rendering of the pre-disciplinary decision(s) allowed for by the City resolution(s). Your predisciplinary review rights are described at the conclusion of this NOTICE.

## I.   RULE, REGULATION, AND/OR STATUTORY VIOLATIONS

My dismissal recommendation is based upon a preliminary determination that you have violated any or all of the following City/Department Policies and Procedures and/or statutory provisions. Please keep in mind that my recommendation need not be predicated upon a finding that you have violated each and every one of the following policies, procedures, and/or statutory provisions. In fact, a finding that you have violated any one of the following policies, procedures, and/or statutory provisions, would in and of itself support my recommendation.

### A.   CALIFORNIA PENAL CODE § 632 – INVASION OF PRIVACY ACT

The Invasion of Privacy Act, or Penal Code § 632 states:

> (a) Every person who, **intentionally** and **without the consent of all parties to a confidential communication**, by means of any electronic amplifying or recording device, **eavesdrops upon or records the confidential communication**, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, **shall be**

215563.2 BA080-017

**Exhibit 6 - 1**

D 00959 056

**punished** by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

. . . .

(c) The term **"confidential communication"** includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

**B.**     <u>CITY OF BARSTOW DISCIPLINE AND DISCIPLINARY POLICIES AND PROCEDURES – SECTION 202</u>

<u>DISCIPLINE POLICY</u>

The continued employment of members of the Department shall be based on reasonable standards of personal conduct, fitness and satisfactory job performance.

1.     Job-related misconduct is defined as conduct which reflects unfavorably on the employee, Department, City, or which may be detrimental to the organization.

2.     Employees must conduct themselves in a manner which brings credit to themselves, the Department and the City at all times.

3.     Failure to meet any required standard may result in disciplinary action.

<u>DISCIPLINE AND STANDARDS</u>

An employee of the Barstow Police Department may be disciplined whenever the employee's job performance or job-related misconduct so warrants. Just cause for such disciplinary action shall include incompetence, commission of a criminal offense, inefficiency, dishonesty, neglect of duty, misconduct, insubordination, conduct which tends to reflect unfavorably upon the employee, Department or City, or failure to observe Departmental or City policies, procedures, rules and/or regulations.

2.     <u>Conduct</u>

h.     Conduct or activities tending to interfere with personal efficiency.

i.     Rude, discourteous or uncivil behavior.

5.   <u>Performance</u>

   g.   Knowingly making false or malicious statements with intent to harm or destroy the reputation, authority, or official standing of Department or individual members thereof.

   k.   Any intentional or continuing violation of the provision of the City or Department policies, rules, regulations or procedures.

   l.   Work-related dishonesty.

   m.   Criminal, dishonest, infamous, or notoriously disgraceful conduct, adversely affecting the employee/employer relationship (on duty or off duty.)

7.   <u>City Records/Confidential Information</u>

   b.   Deliberately withholding information related to work from supervisors or others requiring the information.

   f.   Failure to disclose material facts or the making of any false or misleading statement on any application, examination form, or other official document of the City.

C.   <u>CITY OF BARSTOW POLICIES AND PROCEDURES MANUAL – PERSONNEL (EMPLOYEE DISCIPLINE); SECTION 404</u>

<u>Standards Of Employee Conduct</u>

1.   Employees shall perform their duties in a manner which earns and maintains the trust and respect of their supervisors, other employees and the public.

<u>Conduct Unbecoming A City Employee</u>

   g.   Misconduct, on or off the job, seriously reflecting on City employees or employment.

   h.   Commission of acts, which if proved, constitute a felony, misdemeanor or other violation of law as established by proper investigation.

   l.   Conduct or activities tending to interfere with personal efficiency.

   n.   . . . rude, discourteous or uncivil behavior.

**Exhibit 6 - 3**

D 00961 058

<u>Job Performance Below Standard</u>

a.     A violation of City rules.

f.     Inattention to or dereliction of duty.

<u>Neglect Of Or Inexcusable Absence From Duty</u>

a.     Neglect of duty.

<u>Employees Shall Cooperate And Work Well With Other Employees In The Public</u>

<u>Improper Behavior In Relations With Supervisors, Fellow Employees Or The Public</u>

a.     Flagrant refusal to perform reasonable work assignments or to cooperate with supervisors or management in the performance of duties (insubordination).

b.     Failure to cooperate with other employees or the public.

c.     Unnecessarily disrupting the work of other employees.

<u>While At Work, An Employee Shall Not Do Anything Which Would Impair Their Ability To Perform Their Duties, Or Discredit The City Or Its Employees</u>

<u>Department Employees Shall Be Characterized By High Personal Integrity Both In Securing Employment And In The Performance Of Their Duties</u>

<u>Fraud, Dishonesty, Theft, Or Falsification Of Records</u>

c.     Intentionally falsify or destroying, without proper authorization, City records.

II.    <u>FACTS SUPPORTING DISCIPLINARY ACTION</u>

Please be advised that a finding that you have committed each and all of the following acts of misconduct is not a condition precedent to my recommendation of dismissal being supported. Rather, your commission of any one of the following acts does in and of itself supports my recommendation for dismissal.

A.   <u>January 17, 2007 Meeting with Lt. Alcantara and Sgt. Libby</u>

You were recently assigned to the position of School Resource Officer (SRO).  On
January 17, 2007 Lt. Alcantara called you into his office for a meeting in the normal
course of duty that included Sgt. Libby.  The purpose of the meeting was to discuss
personnel issues related to your SRO assignment and your work performance.  The door
to Lt. Alcantara's office was closed during the meeting.

During the meeting, you discussed issues relating to your school assignment, the fact that
you were not happy with the assignment and believed a less senior officer should have
been assigned that position, and your concern about having to work overtime for games
at the high school.  Despite your unhappiness with the assignment, Lt. Alcantara
encouraged you to do the best job you could in that assignment.

Following this discussion with Lt. Alcantara, Sgt. Libby informed you that Sgt. Ramirez
told him that you showed up to work on January 7, 2007, against the direction of Sgt.
Libby, and that you told Sgt. Ramirez that Sgt. Libby had approved your prior request for
family leave on January 8, 2007.  You were scheduled to start a new Monday through
Friday shift in your SRO assignment beginning January 8th.  On January 5, 2007, for
scheduling reasons, Sgt. Libby told you not to come to work on Sunday, January 7, 2007
and to start your new assignment on Monday, January 8, 2007.  You showed up for your
otherwise regularly scheduled shift on January 7, 2007, against the direction of Sgt.
Libby.

On January 7, 2007 you told Sgt. Ramirez that you never had a conversation with Sgt.
Libby regarding your shift schedule for January 7th.  When Sgt. Libby asked you about
your conversation with Sgt. Ramirez, during the January 17, 2007 meeting, you told Sgt.
Libby that you and he (Sgt. Libby) never had a conversation about your work hours on
January 7th and 8th and that Libby had approved your request for family leave on
January 8, 2007.  Sgt. Libby told you that your position was incorrect

Sgt. Libby handed you an "Oral Reprimand (Documentation of Counseling)"
memorializing this occurrence.  The oral reprimand document was prepared prior to the
January 17, 2007 meeting, and was not based on any statements made by you on January
17, 2007.  You signed the memorandum acknowledging your receipt of it.  You
submitted a rebuttal to the Letter of Oral Reprimand on January 29, 2007, reiterating your
position that no conversation between you and Sgt. Libby took place on January 5, 2007.
You further stated that you showed up at work on January 7, 2007 as scheduled, "not
knowing any better."  Sgt. Ramirez supposedly gave you the option of working that shift
or going home.  You chose to stay and work.  You then stated that you told Sgt. Ramirez
that you needed to take a family sick day on January 8, 2007.

The Oral Reprimand did not charge you with any violations of department rules or
regulations.  It merely stated that it would be used in your next performance evaluation
and then discarded.

**Exhibit 6 - 5**

### B.    <u>You Admit to Secretly Tape-recording the January 17, 2007 Meeting</u>

Upon your dismissal from the meeting with Lt. Alcantara and Sgt. Libby, you informed Sgt. Libby that you needed to visit the Personnel Office. While there, you advised Human Resources Director Eileen Martin of part of your meeting with Lt. Alcantara and Sgt. Libby, which you had secretly recorded. A short time later, you returned to the Sergeant's Office. Upon your return, Lt. Alcantara confronted you about whether you recorded the prior meeting in his office. You admitted that "yes," you did in fact record the meeting. You stated that you thought Lt. Alcantara was aware of the recording because you believed the recorder was visible in your lap.

Lt. Alcantara demanded that you give him the recording device and you refused. You continued to record the subsequent events, this time with both Lt. Alcantara and Sgt. Libby's knowledge. Lt. Alcantara again ordered you to relinquish the recorder and again you refused. You then indicated that you needed a representative present. You contacted your attorney representative who advised you not to relinquish your recorder.

Lt. Harpole arrived on the scene and advised you that you were the subject of a criminal investigation for secretly tape recording your supervisors. I then informed you that you were going to be placed on administrative leave, pending the investigation. Lt. Harpole took over the investigation and ordered you to relinquish the recorder, which you did. You told Lt. Harpole that he was under an obligation not to destroy the contents of the recording. You told him that aside from several personal conversations, the only two recorded conversations were the one from the January 17, 2007 meeting with Lt. Alcantara and Sgt. Libby, and the one currently being recorded.

### C.    <u>Internal Affairs Investigation</u>

On February 14, 2007, Lt. Harpole interviewed you regarding the January 17, 2007 incident described above. Your representative, attorney Steven Gay Brock, was present. You were informed of your <u>Miranda</u> rights but did not waive them. You were subsequently ordered to participate in the administrative investigation.

During this interview, you admitted that you recorded the January 17, 2007 meeting with Lt. Alcantara and Sgt. Libby. You admitted that the office door was closed during the meeting and that it was reasonable to believe that the three parties would be the only parties to the conversation. You admitted that the conversation centered around personnel issues, which you acknowledged are indeed, confidential.

You stated that you had a recording device in your possession and that it was in your hands on top of your lap. You stated that you intentionally turned on the recorder for the meeting. You did not obtain the consent of either Lt. Alcantara or Sgt. Libby to record the meeting. You stated that you recorded the meeting because you anticipated some kind of discipline and you wanted the recording so that you could rebut the allegations at a later time. Your representative argued that you had the right to record the meeting

Exhibit 6 - 6

D 00964

pursuant to Government Code section 3303(g) because the meeting was allegedly an
interrogation pursuant to the POBR and the recorder was in plain view.

### D.   Receipt of Training on Proper Use of Audio Recording Devices

Prior to the January 17, 2007 meeting, you had received training on the proper use and
restrictions upon audio recording devices. On April 25, 1996, you received roll-call
training relating to tape-recording "non-criminal subjects." During the training, you were
informed that it is both a criminal offense and a tort action to record a conversation when
the other party has reason to believe the conversation is private. You were further
informed that prior to recording any private conversation, the other party must give
consent to the recording. The fact that a second party is notified and then continues to
speak, does not constitute an "implied agreement." You were further informed that if you
are going to tape a conversation, upon obtaining consent, you should introduce, on the
tape, that the conversation is being recorded and that the parties are aware that it is being
recorded.

On July 9, 2004, you received further roll-call training on the use of department-issued
tape recorders.

## V.   ANALYSIS

Penal Code section 632 prohibits one from recording a "confidential communication"
without the other parties' consent. Under section 632, confidentiality requires "the
existence of a reasonable expectation by one of the parties that no one is listening in or
overhearing the conversation." (*Flanagan v. Flanagan* (2002) 27 Cal. 4th 766.) Your
meeting on January 17, 2007 with Lt. Alcantara and Sgt. Libby is deemed a "confidential
communication." The door to Lt. Alcantara's office was closed, such that a reasonable
person would believe that nobody, other than the parties in the room, was listening to or
overhearing the conversation. You also admitted that it is reasonable to believe that the
three parties in the office would be the only parties to the conversation. You further
admitted that the conversation centered around personnel issues, which are indeed,
confidential. Both Lt. Alcantara and Sgt. Libby are adamant that they considered the
meeting to be confidential, as that term is defined above. Thus, the meeting in Lt.
Alcantara's office was a confidential communication.

For a violation to occur under Penal Code section 832, the recording of a confidential
communication must be made without the other parties' consent. You admitted that you
did not obtain either Lt. Alcantara or Sgt. Libby's consent to record the meeting. Further,
there was no introduction to the recording to indicate that all the parties were aware of the
recording and consented thereto. Although both Lt. Alcantara and Sgt. Libby were
unaware at the time of the meeting that you were recording, even had they seen the
recorder, this does not constitute consent.

Your argument that Government Code section 3303(g) authorized you to record the
meeting because you believed it was an "interrogation" is both unpersuasive and a lie. If

**Exhibit 6 - 7**

D 00965 062

you believed that you would have been subject to an "interrogation," which would have likely lead to discipline, you would have invoked your right to representation, as you did later that day upon being confronted about the recording device.  Although you admittedly knew of your POBR rights to representation, your failure to invoke such rights at the subject meeting is evidence that contrary to your assertion at the pre-disciplinary meeting, you did not believe the meeting was an interrogation, or one which focused on matters likely to result in punitive action, the conditions precedent to recording or to having a representative present.  (See Government Code §§ 3303, 3303(g)(i)).

In this same regard, you have been "interrogated" in past instances where the POBR did apply. Thus, you know that in those cases, the Department itself records the meeting, with a tape recorder being clearly displayed on the table in front of the interviewee.  The lack of such action by the Department on January 17, 2007, is further indication of you lying during the pre-disciplinary meeting, when you claimed you thought you were being interrogated pursuant to the POBR.

Finally, if you genuinely believed that the January 17, 2007 meeting was an interrogation governed by the POBR, with you having a "right" to record, why would you keep your recorder on your lap, where the microphone would be less likely to pick up voices and the device would be difficult to see.

Your defense is no defense at all, and evidences your dishonesty.

Further the fact that you received an "Oral Reprimand (Documentation of Counseling)" from Sgt. Libby does not convert the meeting from one that was made in the "normal course of duty" to one of "interrogation."  Sgt. Libby intended only to counsel you about your prior conduct.  He did not intend to gather any additional facts from you.  Further, the memorandum merely memorializes the conversation you had with Sgt. Libby on January 5th, about working on January 7th and your subsequent conversation with Sgt. Ramirez telling him that the conversation between you and Sgt. Libby never occurred.  The memorandum further states that the information from the counseling memorandum would be documented in your next performance evaluation and then destroyed.  You were not charged with a violation of any department rules and/or regulations.  The memorandum merely admonished you for your conduct and informed you that the conduct is unacceptable.  This counseling session, which occurred in the normal course of duty, was not an interrogation likely to lead to disciplinary action such that you were authorized to record the meeting with or without the consent of all of the parties.

Peace officers are generally held to a higher standard of conduct than other public employees. (*Pasadena Police officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 572.)  "Peace officers may be disciplined, including termination of employment for violating laws they are employed to enforce." (*Hooks v. State Personnel Bd.* (1980) 111 Cal.App.3d 572, 577.)  As a peace officer, you are expected to obey the laws which you are employed to enforce.  You knew, (or reasonably should have known) based on your previous training, that secretly recording a confidential communication during an administrative interview, and without every party's consent, violated Penal

**Exhibit 6 - 8**

Code section 632. With this knowledge, you committed a crime while on duty as a peace officer. Your subversive conduct toward your supervisors is intolerable and as such, warrants termination.

As regards your dishonesty, both in secretly recording the meeting and during your pre-disciplinary meeting, such acts themselves form a basis for termination.

Police officers are held to the highest standards of conduct. (See, e.g., *Ackerman v. State Personnel Board* (1983) 145 Cal.App.3d 395, 400.) With respect to honesty and integrity, a police officer is expected to tell the truth at all times. (Id. at p. 391.) The credibility and honesty of a police officer are an essential function of the job. (Ibid. ["a police officer is expected to tell the truth...the credibility and honesty of an officer are the essence of the function"].)

With respect to lying by a police officer, dismissal from employment is the appropriate discipline even in instances where the officer was a long-term employee with little or no record of prior discipline. (See, e.g., *Nicolini v. Tuolumne* (1987) 190 Cal.App.3d 619 [termination of a deputy sheriff for dishonesty upheld where deputy had nine years of service and no prior discipline]); *Paulino v. Civil Service Commission* (1985) 175 Cal.App.3d 962, 971 [discharge of police officer for falsely reporting sick leave upheld].) Dishonesty is intolerable conduct for a law enforcement officer, and there is no other reasonable choice but dismissal from employment.

Because dishonesty is incompatible with the essential duties of a police officer, your lying forms an independent alternate basis for my preliminary determination that you shall be dismissed from your employment as a City police officer. (*Paulino v. Civil Service Com.* (1985) 175 Cal.App.3d at p, 972 [held that "a [peace officer's] honesty and credibility are crucial to proper performance of his duties. Dishonesty in matters of public trust is intolerable"]; *Ackerman*, 145 Cal.App.3d at p. 391 ["a police officer is expected to tell the truth...the credibility and honesty of an officer are the essence of the function"].)

Finally, honesty, integrity and a reputation for truthfulness are essential qualifications to perform the job of police officer. Your honesty and integrity have been permanently impaired because of your conduct in this case. Your conduct in this case negatively impacts your ability to testify convincingly in criminal and civil proceedings. The ability to testify convincingly in criminal and civil matters is an essential function of your job. The records of your dishonesty are discoverable both pursuant to a Pitchess motion under Evidence Code section 1043 and pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 (see above). Equally important, I, and other members of this Department, must be able to trust you and to rely upon your representations. In light of your dishonesty in this case, I have lost all trust in you. It is my strong belief that, having lied in this case, you are bound to lie again and I will be required to treat any representation by you with suspicion.

## V.   DISTRICT ATTORNEY REVIEW

Please be advised that the conduct described in this internal affairs investigation is being reviewed by the District Attorney's Office as regards any criminal conduct that may have been committed by you. It is likely that a determination as to a criminal filing will not be made by the District Attorney's Office prior to completion of the pre-disciplinary proceedings in your case. Therefore, please be advised that I am reserving unto myself the right to amend this notice of intended dismissal to reflect any future determinations by the District Attorney's Office which I deem relevant to this case. Such amendments may include, but not be limited to, additional Rule, Regulation and/or statutory violations, additional factual bases for discipline (such as a criminal filing or a conviction of a crime), and/or additional support for the penalty recommended herein.

## VI.   PERSONNEL FILE

Your entire Personnel File has been considered by me in arriving at this determination. Although it is not attached to this NOTICE, you may contact Ms Eileen Martin, the HR Director, in order to make an appointment to examine your file.

## VII.   PRE-DISCIPLINARY REVIEW OPPORTUNITY

Pursuant to City of Barstow Police Department Policies and Procedures Manual (Discipline and Disciplinary Action) Section 202, and the case of *Skelly v. State Personnel Board*, you are entitled to a pre-disciplinary meeting with the Chief of Police. Such a meeting shall occur prior to my rendering of a final determination as to whether not to terminate your employment as a City police officer. In lieu of meeting with me, you may provide a written pre-disciplinary response to this notice.

Although a pre-disciplinary meeting is not a trial-type evidentiary hearing, but instead, a chance to rebut this NOTICE and to provide mitigating factors, you may be represented at that meeting by an individual of your choice. Any position offered by you at the pre-disciplinary meeting will be considered by me prior to rendering my final determination.

Your failure to timely request a pre-disciplinary meeting, or to timely submit a written pre-disciplinary response to this NOTICE, shall be deemed your waiver of such response opportunity, and I shall render a disciplinary determination based upon this NOTICE and its attachments.

I have calendared March 28, 2007 at 10:00 hours as the date and time for the pre-disciplinary meeting to be conducted. It shall be conducted within my office at the City Police Department. In the alternative, a timely written reply to this NOTICE should be received by me not later than 1700 hours on that same date.

## VI.   ATTACHMENTS

1.   Report of Investigation in IA2007-001.

2.      Copies of audio tape recordings of interview statements.

3.      Applicable City/Department Rules and Regulations.

4.      Penal Code § 632.

Received:

5-14-07
_____
Date

_____
Ray Warren

# Exhibit 7

Message                                                                        Page 1 of 1

## Eileen Martin

**From:** Ray Warren

**Sent:** Friday, November 17, 2006 1:21 PM

**To:** 'moeanray@verizon.net'; 'dieter@policeattorney.com'; Eileen Martin; Hector Rodriguez

**Subject:** FW: Shift Scheduling

This is just FYI for you guys.

-----Original Message-----
**From:** Ray Warren
**Sent:** Friday, November 17, 2006 1:19 PM
**To:** Lee Gibson
**Subject:** RE: Shift Scheduling

Chief,
Thank you for your response. Based on your response there seems to be some misunderstanding. This meeting is in accordance with Article 9 of our MOU which allows The BPOA to call a special meeting with you once a quarter. We will chair this meeting and no other members of management will be invited. The purpose of the meeting is simply to provide a forum for the members of the OA to discuss issues directly with you. This is definitley not intended to be be some kind of a "bitch session" with open season on you. There are issues within the department that the officers want to discuss with you. I would appreciate you contacting me upon your return from vacation so we can come up wtih a mutually agreeable time to meet.

Thank You,
Ray

-----Original Message-----
**From:** Lee Gibson
**Sent:** Wednesday, November 15, 2006 2:16 PM
**To:** Ray Warren
**Cc:** Hector Rodriguez
**Subject:** FW: Shift Scheduling

I will schedule the General Meeting sometime in December after I return from vacation. However the 8 hour shifts will not be part of the discussion as it is a Management right to determine scheduling. I gave the Association plenty of notice before we returned to the 8hr. shifts.

-----Original Message-----
**From:** Ray Warren
**Sent:** Wednesday, November 08, 2006 9:33 AM
**To:** Lee Gibson
**Subject:** Shift Scheduling

Chief,
We (The OA; NOT Ray) would like to meet with you regarding the current 8 hour shift shedules for patrol and Detectives. We are concerned since this schedule is not having the desired effect for better coverage. It is having the effect of degradation of morale, along with other negative issues.

We would like to call a General Meeting with you as per our MOU. Please contact me at your convenience to work out a mutually agreeable time and place.

Respectfully,
Ray Warren, President
BPOA

7/30/2007

**Exhibit 7**

D 00400

068

# Exhibit 8

Message                                                                    Page 1 of 2

## Eileen Martin

**From:**   Ray Warren
**Sent:**   Sunday, December 03, 2006 11:27 AM
**To:**     'moeanray@verizon.net'; 'dieter@policeattorney.com'; Eileen Martin
**Subject:** FW: OIC position

FYI

-----Original Message-----
**From:** Ray Warren
**Sent:** Sunday, December 03, 2006 11:26 AM
**To:** Lee Gibson
**Subject:** RE: OIC position

Chief,
I checked with the Sergeants and the Lieutenant. They each pointed the finger at each other and this is why I
have asked you. As far as FTO positions and OIC's, we have to adhere to our MOU articles 33 and 36
respectively. The MOU take precedence over department policy.

It is obvious that this comes down to personal favor. I have asked Rudy about being excluded from ride-a-longs.
Like I said to him, I have now been summarily excluded from promotions, SRT, FTO and now OIC. Again I realize
that I am not favored by management but it is important to remember that I must be treated fairly and equitably. I
am also curious as to why you cc'd the Sgt's and Lt's with your response to me. I am asking you to reconsider at
least the OIC issue for now.

Ray

-----Original Message-----
**From:** Lee Gibson
**Sent:** Wednesday, November 15, 2006 3:33 PM
**To:** Ray Warren
**Cc:** Albert Ramirez; Andy Espinoza; Keith Libby; Mark Franey; Mike Hunter; Rich Harpole; Tim Heiden;
Rudy Alcantara
**Subject:** RE: OIC position

Refer to policy 124 under Qualifications, OIC. There are two reasons. You received "Meets Standard" on
your last two evaluations and you were not recommended by your or any other Sergeant. Please talk to
them and hopefully they will be honest with you. I've also discovered an Officer who is being used as a OIC
that shouldn't be. This will be addressed by Lt. Alcantara and corrected so that everyone meets the same
standard. OIC's were selected by Lt. Alcantara and the Patrol Sergeants.

-----Original Message-----
**From:** Ray Warren
**Sent:** Saturday, November 11, 2006 12:10 PM
**To:** Lee Gibson
**Cc:** 'dieter@policeattorney.com'
**Subject:** OIC position

Chief,
I have still not received a response to my other message (11-1-06) to you regarding my exclusion as
an OIC. Today in the absence of the Sergeant/Watch Commander, an officer who is junior to me
(Chris Kirby) was used as the OIC. It should also be noted that this officer was held over after a
graveyard shift for 6 hours to fill in as OIC. After this a different officer (Dante Caliboso), who is also
junior to me, came in on overtime to fill in as OIC.

I again ask you why I am being excluded now as an OIC. You are demeaning me in the eyes of my
fellow officers, junior or otherwise. When I am asked by these people why I am being excluded I

7/30/2007

**Exhibit 8 - 1**

D 00402

070

don't have an answer.  It is no secret to anyone that I am not favored by management.  And for this I still don't know why.  It is also obvious that you view my postition as the BPOA president with disdain.  There is not a legitimate reason for you to exclude me.  You may not favor me but you are obligated to treat me fairly and with dignity.  This is not occuring as a matter of practice and I am asking you to reevaluate your actions.  I still await a response from you.

Respectfully,
Ray Warren

7/30/2007

**Exhibit  8 - 2**

D 00403

071

# Exhibit 9

# BARSTOW POLICE DEPARTMENT
## PERFORMANCE APPRAISAL REPORT

| Type of Report: | *Annual* | | Appraisal Period: | *04/01/05* | to | *04/01/06* |
|---|---|---|---|---|---|---|
| Employee Name: Warren, Ramon | | | Rank: | Police Officer | | |
| Division: | *Patrol* | | Duty Assignment: | Patrol Officer | | |

**Sick Hours Used This Period:**

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceeds Standard | Outstanding |
|---|---|---|---|---|---|
| **1. Care of equipment:** The extent to which the employee exercises proper operation and maintenance of equipment. | ☐< Shows a complete disregard for, and is at times deliberately abusive toward equipment. | ☐< ☐> Is careless and inconsistent in the care and operation of equipment. Requires close supervision. | ☐< ☐ ☒> Makes a reasonable effort to ensure proper operation and maintenance of equipment | ☐ ☐> Follows policies and procedures to ensure above average care in the proper use and maintenance of equipment. | ☐ Demonstrates, through self-initiated effort, a high degree of care and concern for all equipment. Ensures against loss or damage by initiating needed maintenance or repair. |
| **2. Cooperativeness:** The extent to which the employee is a team player and is willing to assist others to get the job done and promote harmony and good relationships. | ☐ Makes no effort to work with others to get the job done. General behavior creates disharmony and promotes poor relationships. | ☐< ☐> Frequently has to be urged to assist others. Inability or lack of desire to be a team player lowers effectiveness. | ☐< ☐ ☒> Participates as a team player. Behavior generally promotes harmony and good relationships. | ☐ ☐> Often seeks opportunity to assist others and actively participates as a team player. Behavior promotes harmony and good relationships. | ☐ Shows an exceptional interest in getting team results. Is self-sacrificing in efforts to help others get the job completed. Behavior consistently promotes harmony and good relationships. |
| **3. Courtesy:** The extent to which the employee is polite, respectful, tactful, considerate and dignified. | ☐ Is often rude and disrespectful in manner and speech. Frequently antagonizes others. | ☐< ☐> Tends to be rude and abrupt at times. Can be courteous to others; however, is not consistent in this regard. | ☐< ☐ ☐> Treats others with respect and generally displays a courteous attitude. | ☐ ☒> Recognizes the importance of treating others with courtesy and respect and is able to maintain courteous demeanor even in adverse situation. | ☐ Makes an overt effort to be courteous. Demeanor commands the highest degree of respect and serves as a standard of excellence. |
| **4. Diligence:** The extent to which the employee can be relied upon to complete assignments. | ☐ Cannot be relied upon to complete an assignment, except under the closest supervision. | ☐< ☐> Often requires follow-up to insure that an assignment is completed in a reasonable length of time. | ☐< ☐ ☒> Requires routine supervision to ensure that assignments will be completed in a reasonable length of time. | ☐ ☐> Minimum supervision required to ensure that assignments are completed within a reasonable length of time. | ☐ Can be consistently relied upon to complete assignments in a timely manner. Sets an example for others and supervision is rarely required. |
| **5. Initiative:** Extent to which the employee displays the motivation necessary to produce without urging. | ☐ Lacks drive and energy and must be continually urged to get results. Requires constant supervision and guidance. | ☐< ☐> Tends to be lazy and requires an inordinate amount of specific direction and supervision. | ☒< ☐ ☐> Displays an acceptable level of drive and energy. Only requires routine guidance and direction. | ☐ ☐> Is self motivated and needs little direction. Frequently seeks assignments and takes advantage of opportunities to produce. | ☐ Is highly motivated and requires very little stimulation. Actively pursues every opportunity to increase productivity. Serves as an outstanding example for fellow workers, supervisors, and others. |
| **6. Judgment:** The extent to which the employee considers all available facts before acting and is logical in conclusions and actions. | ☐ Does not consider obvious facts in a situation and fails to act logically. Decisions are unreliable. | ☐< ☐> Does not always consider available facts, resulting in some illogical conclusions. Supervisors tend to question and review decisions. | ☒< ☐ ☐> Gives adequate consideration to all known facts before taking action. Decisions are generally accepted. | ☐ ☐> In most cases decisions are sound and reflect thorough consideration of all known facts. | ☐ Displays extraordinary insight and ability to analyze and evaluate facts. Resulting conclusions and actions are consistently reliable. |

1

D 00004

**Exhibit 9 - 1**

073

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceeds Standard | Outstanding |
|---|---|---|---|---|---|
| **7. Leadership:** The extent to which the employee is able to accept the responsibility of leadership. Has the ability to obtain satisfactory results. | ☐ Does not demonstrate the ability to obtain the desired results through the work of others. Does not have the respect and confidence of others. | ◁☐ ☐ Possesses leadership capabilities. However, frequently fails to gain the support of those who must be controlled and directed. | ◁☒ ☐ ☐▷ Accepts a leadership role in keeping with the position and generally achieves satisfactory results through the efforts of those directed or controlled. | ☐ ☐▷ Has the ability to organize, plan, control and guide others very effectively. Consistently gains the confidence and support of those supervised. | ☐ Actively seeks the responsibility of leadership. Possesses exceptional leadership ability to plan, control and organize. Regularly relied upon for advice, assistance and direction. |
| **8. Loyalty** The extent to which the employee supports the department and its policies. The quality of rendering faithful and willing service towards the attainment of department goals. | ☐ Displays antagonistic and resentful attitude towards the department and its policies. | ◁☐ ☐ At times openly criticizes the department, its procedures, policy and operation. When personally in disagreement does not enthusiastically provide support. | ◁☐ ☒ ☐▷ Generally supportive of the department and its policies. Renders willing and faithful service when called upon. | ☐ ☐▷ Supports and defends the department and its policies, procedures and operation. Frequently provides willing and faithful service to the department without being called upon. | ☐ Actively supports, defends and promotes the department and its policies and instills such an attitude in others. Sets and exemplary example of devotion to duty. |
| **9. Personal Appearance** The employee's ability to maintain a standard of personal appearance and neatness in keeping with the demands of the position. | ☐ Creates an unfavorable impression. Dresses slovenly or inappropriately. | ◁☐ ☐ Frequently has been inappropriately or untidily dressed. General appearance, including dress and personal neatness is not up to standard. | ◁☐ ☐ ☐▷ Is presentable in appearance and meets the acceptable standard of dress. | ☒▷ Consistently creates a favorable impression. General appearance is above standard. | ☐ Consistently presents a striking appearance. Sets an example for others and brings credit to the department. |
| **10. Personal Development** The extent to which the employee strives for self improvement and skill development through education. | ☐ Regularly fails to participate in required training programs. | ◁☐ ☐ Occasionally fails to participate in required training programs. | ◁☐ ☐ ☒▷ Participates in required training programs to maintain skills and knowledge at an acceptable level. | ☐ ☐▷ Participates in self-initiated training programs and as a result has enhanced skills and knowledge. | ☐ Shows an exceptional interest in personal development by consistent participation in education programs which extend beyond those available through the department. These efforts serve as an example to others. |
| **11. Physical fitness** The employee's physical condition, level of endurance, and ability to react to physically demanding situation. | ☐ Is unable to perform required duties due to a poor physical fitness level. | ◁☐ ☐ Unable to react effectively to a physically demanding situation or endure strenuous assignments. | ◁☐ ☐ ☐▷ Maintains an acceptable level of physical fitness. Successfully reacts to most physical challenges and strenuous assignments. | ☒ ☐▷ Physical condition exceeds acceptable standards. Is capable of enduring physically demanding situations and strenuous assignments. | ☐ Is in excellent physical condition and is capable of reacting to any physical challenge. Makes a direct effort to remain physically fit through an ongoing fitness program. |
| **12. Quality of work** The extent to which the employee completes work in a through, neat, accurate and effective manner. | ☐ Work product consistently needs revision as a result of incompleteness, untidiness, inaccuracy or ineffectiveness. | ◁☐ ☐ Work product frequently reflects a lack of consideration for the factors of thoroughness, neatness and accuracy. An undue amount of review is necessary. | ◁☐ ☐ ☒▷ Work is completed in an acceptable manner. Generally considers the need for neatness, accuracy and thoroughness. | ☐ ☐▷ Work product is consistently effective, thorough, neat and accurate. Requires minimal supervision. | ☐ Work product is exceptional. Sets an example for others in the completion of work in a very accurate, neat, through and effective manner. |
| **13. Safety skills** The extent to which the employee practices safety techniques in both routine and emergency situations. | ☐ Demonstrates little concern for the safety of self or others. Consistently violates safety procedures. | ◁☐ ☐ Frequently demonstrates poor safety techniques. Requires close supervision. | ◁☐ ☐ ☐▷ Generally demonstrates good safety techniques and procedures. | ☒ ☐▷ Regularly demonstrates proper and effective safety techniques and procedures. | ☐ Consistently demonstrates exceptional safety techniques. Is outstanding in this capacity and serves as an example to others. |
| **14. Self-expression** The extent to which the employee orally communicates in a clear, precise and convincing manner. | ☐ Is unable to communicate in a clear, precise and convincing manner. | ☐ ☐▷ Exhibits difficulties in self expression. Frequently is unable to communicate clearly and precisely. | ◁☐ ☐ ☐▷ Is able to communicate in an acceptable manner. | ☒ ☐▷ Oral expressions are clear, precise and convincing. | ☐ Projects an outstanding ability to express clear, precise and convincing thought in a group or individual setting. |

2

D 00005

**Exhibit 9 - 2**

074

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceeds Standard | Outstanding |
|---|---|---|---|---|---|
| **15. Stability** The extent to which the employee displays poise and controls emotions in routine or adverse situations. | Displays a serious lack of self control. Cannot be relied upon in routine or emergency situations. | Frequently loses control of situations. Cannot be relied upon to maintain self-control and poise. | Demonstrates an acceptable level of self-control. Exhibits poise and composure during most situations. | ☒ Is emotionally well balanced. Shows good self-control and poise and can be relied upon to perform under pressure. | Sets an example of poise and self-control. Is exceptionally well balanced and acts in a manner that promotes stability in others. |

**Supervision/Management**

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceeds Standard | Outstanding |
|---|---|---|---|---|---|
| **16. Community Relations** The extent to which the employee is involved in developing and furthering positive relationships between the community and the department. | Does not understand the value of community support. Makes no effort to establish good community relationships. | Does not always exhibit an awareness of the need for community support. Makes little effort to develop and further positive community relationships. | Demonstrates an awareness of the value of community support. Ensures that sub-ordinates conduct themselves in a manner that fosters positive community relationships. | Consistently demonstrates a high degree of awareness of community expectations and the need for public support. Participates in community activities. | Develops and maintains positive relationships with community leaders and groups. Participates and encourages subordinate participation in community sponsored programs. |
| **17. Inspection** The extent to which the employee conducts ongoing inspections to reveal areas where improvement or correction is needed. | Fails to conduct inspections in order to reveal areas where improvement or correction is needed. | Inspections are inconsistent. Problems are often not recognized nor corrected. | Conducts regular inspections to reveal areas where improvement or correction is needed. Takes necessary action to correct problems. | Inspections are timely and thorough. Problems are corrected and suggestions are made for needed change. | Consistently conducts timely inspections. Identifies problem areas and makes the necessary corrections to ensure a high standard of operation. |
| **18. Personnel Development** The extent to which the employee is involved in the professional development of subordinates through evaluation, training, and discipline. | Not concerned with the professional growth, training needs or discipline of subordinates. | Subordinate evaluations are superficial. Rarely involved in subordinate training. Is in consistent in discipline practices. | Involved in the development of subordinates. Evaluations show research and thought. Encourages professional growth through training and appropriate discipline. | Demonstrates an exceptional interest in subordinate development. Uses comprehensive evaluations as a tool to direct training and consistently applies effective discipline. | Committed to the development and growth of subordinates. Evaluations reflect continuous involvement in their training and discipline. |
| **19. Planning and Organizing** The extent to which the employee plans and organizes work, utilizing available resources. | Does not effectively plan and organize work. Fails to utilize resources to achieve results. | Has difficulty planning and organizing work. Does not always make use of available resources. | Generally plans and organizes work appropriately. Sets reasonable priorities and makes use of available resources to meet most goals. | Consistently and effectively plans and organizes work. Seeks out and utilizes available resources. | Demonstrates exceptional skill in planning and organizing work. Is innovative in identifying and utilizing resources. |

**20.   Overall Evaluation:** MEETS STANDARDS

This overall evaluation is not an average of the standard factor ratings but is being based on:
1. The employee's value in the present assignment and performance therein during the evaluation period.
2. Consideration of general needs of the department, comparing the capabilities and characteristics of this employee to department standards.

**21.   Comments:** This evaluation is a compilation of opinions and comments from all supervisors responsible for the direction and leadership of Officer Warren. During this rating period Officer Warren has been assigned as a patrol officer for the Uniform Patrol Division. He has also worked periodically as an (OIC) Officer-in-Charge for his respective shift. This evaluation is an annual evaluation.

3

D 00006

**Exhibit  9 - 3**

075

22.   **Specific Achievements:**  In March 2006 Officer Warren received a letter of recognition from Sergeant Albert Ramirez. This was for his perfect firearms qualification score during firearms training for the 1st quarter of 2006.

In December 2005 Officer Warren received a commendation letter from Chief Caleb Gibson and Sergeant Andrew Espinoza. This was for the thorough investigation he conducted on a residential burglary incident and on a robbery incident. Officer Warren's investigative skills helped in the capture of the suspects on both incidences.

In November 2005 Officer Warren received a letter of commendation from Lieutenant Rudy Alcantara. This was for his quick response in the apprehension of two suspects.

23.   **Employee's Strongest Points:**  Officer Warren is very courteous, polite and respectful to the citizens he comes in contact with and to his co-workers. His communication skills are clear, precise and effective. Officer Warren is a senior officer within the department and he has a wealth of knowledge and experience. Officer Warren is always willing to share his knowledge with junior officers and he assists them in anyway that he can. Officer Warren's physical ability is above average along with his personal appearance. When Officer Warren sets his mind on completing a specific task, that task is accomplished in an excellent and timely manner.

24.   **Areas for Improvement:**  Officer Warren's self-initiated activity is generally below the department average in arrests, citations, vehicle stops and pedestrian checks. Officer Warren has not initiated a Community Oriented Policing project to deal with a specific problem issue within the city. Officer Warren does not work at his full potential, but if he did, he would be one of the department's top officers. During this rating period Officer Warren only attended minimal required training. Officer Warren is encouraged to continue his formal and law enforcement education, which would assist him on advancement within the department. Officer Warren is reminded that the lack of pursuit of additional education may present an obstacle to future career advancement.

25.   **Additional Information:**   For some portions of this rating period Officer Warren has performed in the leadership role of an (OIC) Officer-in-Charge. He has performed the duties in a satisfactory manner.

Officer Warren has improved in the area of the number of field interrogation cards he completes and turns in.

26.   **Action Plan for Improvement:**  Officer Warren has expressed in his goals and objectives that he wants to continue his formal education. He also wants to continue to be a positive influence and to present a positive attitude. Officer Warren further indicated that he wanted to maintain a high standard and to continue to follow the department's mission & values. Officer Warren should make all efforts to attain these goals and he is reminded that the Staff is at his disposal should he need assistance in achieving these goals.

4

D 00007

**Exhibit 9 - 4**

**27.    Signatures and Approvals:**

I have discussed this report with a supervisor and understand that signing this evaluation does not necessarily imply agreement.

| | date |
|---|---|
| Evaluated Employee - Officer Ramon Warren | 10-12-06 |
| Evaluating Supervisor - Sgt. Albert Ramirez Jr. | 10-07-06 |
| Supervisor Reviewing with Employee | 10-12-06 |
| Division Commander Lt. Rudy Alcantara | 10/12/06 |
| Chief of Police- Caleb Gibson | 10-12-06 |
| Human Resources Manager- Eileen Martin | 10-12-06 |

**28.    Policies:**

Within the last 30 days I have read and I understand the department/city policies concerning pursuits, use of force, and sexual harassment.    Yes ☐    No ☒    (please initial the appropriate box)

If your answer to the above question is no then you are directed to read the policies concerning pursuits, use of force and sexual harassment within the next 30 days.

| Supervisor reviewing with employee | Employee | date |
|---|---|---|
| | | 10-12-06 |

5

D 00008

**Exhibit 9 - 5**

# Memorandum

**To:**    Sergeant Albert Ramirez

**From:**  Officer Ray Warren

**Date:** September 10, 2006, 2005

**Re:**    Goals and Objectives

---

I intend to maintain the high standard of service I have always given, as expected by the department. I will do so in keeping with the department mission and values. I will keep myself properly trained and fit. I will also continue to better myself through formal education, thus improving my viability for promotion and lateral assignment. I will continue to present a positive attitude and be a positive influence on others.

1

D 00009

**Exhibit 9 - 6**

078

# Exhibit 10

# BARSTOW POLICE DEPARTMENT
## PERFORMANCE APPRAISAL REPORT



| Type of Report: *Annual* | Appraisal Period: OCTOBER 2004 to OCTOBER 2005 |
|---|---|
| Employee Name: WARREN, RAMON | Rank:   Police Officer |
| Division:   *Patrol* | Duty Assignment: Patrol Officer |

**Sick Hours Used This Period:**

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceeds Standard | Outstanding |
|---|---|---|---|---|---|
| **1. Care of equipment:** The extent to which the employee exercises proper operation and maintenance of equipment. | ☐ Shows a complete disregard for, and is at times deliberately abusive toward equipment. | ☐ ☐ Is careless and inconsistent in the care and operation of equipment. Requires close supervision. | ☐ ☐ ☒ Makes a reasonable effort to ensure proper operation and maintenance of equipment | ☐ ☐ Follows policies and procedures to ensure above average care in the proper use and maintenance of equipment. | ☐ Demonstrates, through self-initiated effort, a high degree of care and concern for all equipment. Ensures against loss or damage by initiating needed maintenance or repair. |
| **2. Cooperativeness:** The extent to which the employee is a team player and is willing to assist others to get the job done and promote harmony and good relationships. | ☐ Makes no effort to work with others to get the job done. General behavior creates disharmony and promotes poor relationships. | ☐ Frequently has to be urged to assist others. Inability or lack of desire to be a team player lowers effectiveness. | ☒ ☐ Participates as a team player. Behavior generally promotes harmony and good relationships. | ☐ ☐ Often seeks opportunity to assist others and actively participates as a team player. Behavior promotes harmony and good relationships. | ☐ Shows an exceptional interest in getting team results. Is self-sacrificing in efforts to help others get the job completed. Behavior consistently promotes harmony and good relationships. |
| **3. Courtesy:** The extent to which the employee is polite, respectful, tactful, considerate and dignified. | ☐ Is often rude and disrespectful in manner and speech. Frequently antagonizes others. | ☐ ☐ Tends to be rude and abrupt at times. Can be courteous to others; however, is not consistent in this regard. | ☐ ☐ Treats others with respect and generally displays a courteous attitude. | ☐ ☒ Recognizes the importance of treating others with courtesy and respect and is able to maintain courteous demeanor even in adverse situation. | ☐ Makes an overt effort to be courteous. Demeanor commands the highest degree of respect and serves as a standard of excellence. |
| **4. Diligence:** The extent to which employee can be relied upon to complete assignments. | ☐ Cannot be relied upon to complete an assignment, except under the closest supervision. | ☐ ☐ Often requires follow-up to insure that an assignment is completed in a reasonable length of time. | ☐ ☒ ☐ Requires routine supervision to ensure that assignments will be completed in a reasonable length of time. | ☐ ☐ Minimum supervision required to ensure that assignments are completed within a reasonable length of time. | ☐ Can be consistently relied upon to complete assignments in a timely manner. Sets an example for others and supervision is rarely required. |
| **5. Initiative:** Extent to which the employee displays the motivation necessary to produce without urging. | ☐ Lacks drive and energy and must be continually urged to get results. Requires constant supervision and guidance. | ☐ ☐ Tends to be lazy and requires an inordinate amount of specific direction and supervision. | ☒ ☐ ☐ Displays an acceptable level of drive and energy. Only requires routine guidance and direction. | ☐ ☐ Is self motivated and needs little direction. Frequently seeks assignments and takes advantage of opportunities to produce. | ☐ Is highly motivated and requires very little stimulation. Actively pursues every opportunity to increase productivity. Serves as an outstanding example for fellow workers, supervisors, and others. |
| **6. Judgment:** The extent to which the employee considers all available facts before acting and is logical in conclusions and actions. | ☐ Does not consider obvious facts in a situation and fails to act logically. Decisions are unreliable. | ☐ ☐ Does not always consider available facts, resulting in some illogical conclusions. Supervisors tend to question and review decisions. | ☐ ☐ ☒ Gives adequate consideration to all known facts before taking action. Decisions are generally accepted. | ☐ ☐ In most cases decisions are sound and reflect thorough consideration of all known facts. | ☐ Displays extraordinary insight and ability to analyze and evaluate facts. Resulting conclusions and actions are consistently reliable. |

1

D 00010

**Exhibit 10 - 1**

080

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceeds Standard | Outstanding |
|---|---|---|---|---|---|
| **7. Leadership:** The extent to which the employee is able to accept the responsibility of leadership. Has the ability to obtain satisfactory results. | ☐ Does not demonstrate the ability to obtain the desired results through the work of others. Does not have the respect and confidence of others. | ☐ Possesses leadership capabilities. However, frequently fails to gain the support of those who must be controlled and directed. | ☐ ☐ ⊠ Accepts a leadership role in keeping with the position and generally achieves satisfactory results through the efforts of those directed or controlled. | ☐ ☐ Has the ability to organize, plan, control and guide others very effectively. Consistently gains the confidence and support of those supervised. | ☐ Actively seeks the responsibility of leadership. Possesses exceptional leadership ability to plan, control and organize. Regularly relied upon for advice, assistance and direction. |
| **8. Loyalty** The extent to which the employee supports the department and its policies. The quality of rendering faithful and willing service towards the attainment of department goals. | ☐ Displays antagonistic and resentful attitude towards the department and its policies. | ☐ At times openly criticizes the department, its procedures, policy and operation. When personally in disagreement does not enthusiastically provide support. | ☐ ⊠ ☐ Generally supportive of the department and its policies. Renders willing and faithful service when called upon. | ☐ ☐ Supports and defends the department and its policies, procedures and operation. Frequently provides willing and faithful service to the department without being called upon. | ☐ Actively supports, defends and promotes the department and its policies and instills such an attitude in others. Sets and exemplary example of devotion to duty. |
| **9. Personal Appearance** The employee's ability to maintain a standard of personal appearance and neatness in keeping with the demands of the position. | ☐ Creates an unfavorable impression. Dresses slovenly or inappropriately. | ☐ Frequently has been inappropriately or untidily dressed. General appearance, including dress and personal neatness is not up to standard. | ☐ ☐ ⊠ Is presentable in appearance and meets the acceptable standard of dress. | ☐ ☐ Consistently creates a favorable impression. General appearance is above standard. | ☐ Consistently presents a striking appearance. Sets an example for others and brings credit to the department. |
| **10. Personal Development** The extent to which the employee strives for self improvement and skill development through education. | ☐ Regularly fails to participate in required training programs. | ☐ Occasionally fails to participate in required training programs. | ☐ ☐ ⊠ Participates in required training programs to maintain skills and knowledge at an acceptable level. | ☐ ☐ Participates in self-initiated training programs and as a result has enhanced skills and knowledge. | ☐ Shows an exceptional interest in personal development by consistent participation in education programs which expand beyond those available through the department. These efforts serve as an example to others. |
| **11. Physical fitness** The employee's physical condition, level of endurance, and ability to react to physically demanding situation. | ☐ Is unable to perform required duties due to a poor physical fitness level. | ☐ Unable to react effectively to a physically demanding situation or endure strenuous assignments. | ☐ ☐ Maintains an acceptable level of physical fitness. Successfully reacts to most physical challenges and strenuous assignments. | ⊠ ☐ Physical condition exceeds acceptable standards. Is capable of enduring physically demanding situations and strenuous assignments. | ☐ Is in excellent physical condition and is capable of reacting to any physical challenge. Makes a direct effort to remain physically fit through an ongoing fitness program. |
| **12. Quality of work** The extent to which the employee completes work in a through, neat, accurate and effective manner. | ☐ Work product consistently needs revision as a result of incompleteness, untidiness, inaccuracy or ineffectiveness. | ☐ Work product frequently reflects a lack of consideration for the factors of, thoroughness, neatness and accuracy. An undue amount of review is necessary. | ⊠ ☐ ☐ Work is completed in an acceptable manner. Generally considers the need for neatness, accuracy and thoroughness. | ☐ ☐ Work product is consistently effective, thorough, neat and accurate. Requires minimal supervision. | ☐ Work product is exceptional. Sets an example for others in the completion of work in a very accurate, neat, thorough and effective manner. |
| **13. Safety skills** The extent to which the employee practices safety techniques in both routine and emergency situations. | ☐ Demonstrates little concern for the safety of self or others. Consistently violates safety procedures. | ☐ Frequently demonstrates poor safety techniques. Requires close supervision. | ☐ ☐ ☐ Generally demonstrates good safety techniques and procedures. | ⊠ ☐ Regularly demonstrates proper and effective safety techniques and procedures. | ☐ Consistently demonstrates exceptional safety techniques. Is outstanding in this capacity and serves as an example to others. |
| **14. Self-expression** The extent to which the employee orally communicates in a clear, precise and convincing manner. | ☐ Is unable to communicate in a clear, precise and convincing manner. | ☐ ☐ Exhibits difficulties in self expression. Frequently is unable to communicate clearly and precisely. | ☐ ☐ ☐ Is able to communicate in an acceptable manner. | ⊠ ☐ Oral expressions are clear, precise and convincing. | ☐ Projects an outstanding ability to express clear, precise and convincing thought in a group or individual setting. |

2

D 00011

**Exhibit 10 - 2**

081

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceeds Standard | Outstanding |
|---|---|---|---|---|---|
| **15. Stability** The extent to which the employee displays poise and controls emotions in routine or adverse situations. | ☐ Displays a serious lack of self control. Cannot be relied upon in routine or emergency situations. | ☐ Frequently loses control of situations. Cannot be relied upon to maintain self control and poise. | ☐ Demonstrates an acceptable level of self-control. Exhibits poise and composure during most situations. | ☒ Is emotionally well balanced. Shows good self-control and poise and can be relied upon to perform under pressure. | ☐ Sets an example of poise and self-control. Is exceptionally well balanced and acts in a manner that promotes stability in others. |
| **Supervision/Management** | | | | | |
| **16. Community Relations** The extent to which the employee is involved in developing and furthering positive relationships between the community and the department. | ☐ Does not understand the value of community support. Makes no effort to establish good community relationships. | ☐ Does not always exhibit an awareness of the need for community support. Makes little effort to develop and further positive community relationships. | ☐ Demonstrates an awareness of the value of community support. Ensures that subordinates conduct themselves in a manner that fosters positive community relationships. | ☐ Consistently demonstrates a high degree of awareness of community expectations and the need for public support. Participates in community activities. | ☐ Develops and maintains positive relationships with community leaders and groups. Participates and encourages subordinate participation in community sponsored programs. |
| **17. Inspection** The extent to which the employee conducts ongoing inspections to reveal areas where improvement or correction is needed. | ☐ Fails to conduct inspections in order to reveal areas where improvement or correction is needed. | ☐ Inspections are inconsistent. Problems are often not recognized nor corrected. | ☐ Conducts regular inspections to reveal areas where improvement or correction is needed. Takes necessary action to correct problems. | ☐ Inspections are timely and thorough. Problems are corrected and suggestions are made for needed change. | ☐ Consistently conducts timely inspections. Identifies problem areas and makes the necessary corrections to ensure a high standard of operation. |
| **18. Personnel Development** The extent to which the employee is involved in the professional development of subordinates through evaluation, training, and discipline. | ☐ Not concerned with the professional growth, training needs or discipline of subordinates. | ☐ Subordinate evaluations are superficial. Rarely involved in subordinate training. Is inconsistent in discipline practices. | ☐ Involved in the development of subordinates. Evaluations show research and thought. Encourages professional growth through training and appropriate discipline. | ☐ Demonstrates an exceptional interest in subordinate development. Uses comprehensive evaluations as a tool to direct training and consistently applies effective discipline. | ☐ Committed to the development and growth of subordinates. Evaluations reflect continuous involvement in their training and discipline. |
| **19. Planning and Organizing** The extent to which the employee plans and organizes work, utilizing available resources. | ☐ Does not effectively plan and organize work. Fails to utilize resources to achieve results. | ☐ Has difficulty planning and organizing work. Does not always make use of available resources. | ☐ Generally plans and organizes work appropriately. Sets reasonable priorities and makes use of available resources to meet most goals. | ☐ Consistently and effectively plan and organize work. Seeks out and utilizes available resources. | ☐ Demonstrates exceptional skill in planning and organizing work. Is innovative in identifying and utilizing resources. |

**20.   Overall Evaluation:   MEETS STANDARDS**

This overall evaluation is not an average of the standard factor ratings but is being based on:
1. The employee's value in the present assignment and performance therein during the evaluation period.
2. Consideration of general needs of the department, comparing the capabilities and characteristics of this employee to department standards.



RECEIVED
OCT 25 2005
BARSTOW
PERSONNEL

3

D 00012

**Exhibit  10 - 3**

082

21.   **Comments:** This evaluation is a compilation of opinions and comments from all supervisors responsible for the direction and leadership of Officer RAMON WARREN.

Officer Warren has been a Police Officer with the Barstow Police Department since Nov. 3, 1986, and is currently assigned to the Patrol Division. Officer Warren is the most senior officer on the shift and acts as the shift OIC in the absence of the shift sergeant. Officer Warren has gained a significant amount of experience, knowledge, and expertise. Officer Warren has filled assignments in the Detective Division, Special Response Team, and as a Field Training Officer. Officer Warren has identified himself as a well qualified officer, who can complete his assignments with little or no supervision. Officer Warren possesses the skills to complete any assignment and is often relied on when an assignment requires special attention.  Because of his seniority, and experience, the younger officers look toward Officer Warren for guidance, direction, and as a roll model. Officer Warren is always willing to assist the younger officers on his shift, and help them with difficult assignments.

Because of his senior officer status, his abilities, and his influence as an example to others, more is expected of his performance as a Barstow Police Officer. Officer Warren should be the leading example in pro-activity, initiative, diligence, and giving the younger officers a positive example. His activity stats should be among the highest but are just passable. Officer Warren's monthly stats reflect below average arrests, citations, car stops, and pedestrian checks.

It appears that the routine and ordinary patrol assignments are not challenging Officer Warren's ability and skills to the degree that routine assignments are approached in a lackadaisical manner. This attitude punctuates his work performance, and has set a standard by which he wastes his potential when he could excel. Officer Warren has the ability, skills, and potential to become a leader in the Police Department, but ignores the opportunities to prove his worth and instead chooses to do the minimum.

Because of this approach to his routine duties, Officer Warren, does only the minimum required, and documents his reports in the same manner.  Officer Warren instead of being pro-active can be found in the station visiting, having coffee, or on the computer reviewing his many e-mails. He can be found in the dispatcher area visiting or matching wits against the computer in a game of solitaire. He has been warned about this habit, encouraged to remain in the field and be more pro-active, but chooses to fall back into the same routine.

Despite his many abilities and potential, Officer Warren, allows himself to remain within the definition of "Meets Standards", when he could guide, and influence others as a positive roll model and leader.

4

D 00013

**Exhibit  10 - 4**

083

22.   **Specific Achievements:**
LETTER of COMMENDATION;, March 2004,from Sgt. Michael Hunter, for his action involving an armed suspect. Officer Warren was commended for his good judgment and restraint during a hazardous incident.

23.   **Employee's Strongest Points:**
EXPERIENCE, KNOWLEDGE :  Officer Warren has gained a respectable amount of knowledge and experience which suggests he possesses the ability and skills of a model Police Officer.
COOPERATIVENESS :  Willingness to assist his peers and give guidance.

24.   **Areas for Improvement:**
INITIATIVE:   Self-initiated activity is generally below the shift average in areas of Arrests, Citations, Vehicle stops, and pedestrian checks.

25.   **Additional Information:**
Officer Warren was assigned as the third (3) phase F.T.O. for trainee Jackson and was complimented on his teaching ability.
Assigned as the shift OIC and acts as the watch commander during the absence of the shift Sergeant.

Officer Warren has submitted a memorandum of his goals and objectives. Officer Warren and I have discussed his goals and objectives, and his career path and potential.

26.   **Action Plan for Improvement:**     I will encourage him to strive and achieve his goals. I will also make myself available for Officer Warren to assist him, and provide opportunities to achieve his goals.

Officer Warren will strive to improve his work performance, improve his self initiated activity, and work towards an Exceeds Standard level of performance.

5

D 00014

**Exhibit  10 - 5**

084

## 27.   Signatures and Approvals:

I have discussed this report with a supervisor and understand that signing this evaluation does not necessarily imply agreement.

| Evaluated Employee - | date |
| --- | --- |
| | 10-21-05 |
| Evaluating Supervisor Sgt. Andy Espinoza | Date |
| A. Espy #56 | 10/21/05 |
| Supervisor Reviewing with Employee | date |
| A. Espy #56 | 10/21/05 |
| Division Commander Lt. R. Alcantara | date |
| R. Alcantara C-2 | 10/24/05 |
| Caleb Gibson - Chief of Police | date |
| | 10-25-05 |
| Personnel Department | Date |

## 28.   Policies:

Within the last 30 days I have read and I understand the department/city policies concerning pursuits, use of force, and sexual harassment.  [ ] YES   [FLT] No    (please initial the appropriate box)

If your answer to the above question is no then you are directed to read the policies concerning pursuits, use of force and sexual harassment within the next 30 days.

| Supervisor reviewing with employee | Employee | date |
| --- | --- | --- |
| A. Espy #56 | | 10-20-05 |

6

D 00015

## Exhibit 10 - 6

085

# Memorandum

**To:**   Sergeant Andy Espinoza

**From:**   Officer Ray Warren

**Date:** October 19, 2005

**Re:**   Goals and Objectives

My goals and objectives are quite simple. I intend to maintain the high standard of service I have always given, as expected by the department. I will do so in keeping with the department mission and values. I will keep myself properly trained and fit. I will also continue to better myself through formal education, thus improving my viability for promotion and lateral assignment. I will continue to present a positive attitude and be a positive influence on others.

D 00016

**Exhibit 10 - 7**



*wk file*

**BARSTOW POLICE DEPARTMENT**
Caleb L. Gibson, Chief of Police
220 E. Mt. View St., Suite B, Barstow, CA 92311-2889
(760) 256-3531 • Fax (760) 256-2215

*03/31/04*

*Lt,*

**TO:**     Officer Ray Warren          *F.Y.I.*

**FROM:**   Sergeant Mike Hunter        *Original went*

**DATE:**   Wednesday, March 31, 2004   *to the Chief.*

**RE:**     Commendation                *Mike*

Officer Warren:

This report is to commend you for your actions during a reported disturbance at 350 Armory Road in the City of Barstow during your assigned shift, today, March 31, 2004.

At approximately 2001 hours, you responded to 350 Armory Road in response to a report of a disturbance involving a father and son. When you arrived at the location you went to the rear yard where it appeared the disturbance was occurring. As you entered the rear yard you encountered a subject with a loaded, double-barrel shotgun. You observed that this subject had the firearm pointed at you, which constituted a threat to your safety as well as the safety of others. You immediately took cover and waited for additional units to arrive. As other units arrived to assist, the armed subject surrendered and was taken into custody. During a search of the subject, an additional loaded firearm was recovered from his rear pant pocket.

Your display of good judgment and restraint during this incident reflects your commitment to the safety of the citizens of this community and your desire to resolve potentially hazardous situations with only that amount of force which is necessary.

Again, I thank you for your efforts and diligence in providing exceptional police service to this community and its citizens.

_____                _____
**Officer Ray Warren**                  **Sergeant Mike Hunter**

Cc:    Chief Lee Gibson
       Personnel File

RECE[...]
OCT 2 5 [...]
BARSTO[...]
PERSON[...]

D 00017

**Exhibit 10 - 8**

087

# Exhibit 11



# BARSTOW POLICE DEPARTMENT
## PERFORMANCE APPRAISAL REPORT

| Type of Report: **Annual** | | Appraisal Period: **04/01/2001** | to | **04/01/2004** |
|---|---|---|---|---|
| Employee Name: **Warren, Ramon** | | Rank: | **Police Officer** | |
| Division: **Patrol** | | Duty Assignment: **Patrol** | | |

**Sick Hours Used This Period:**

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceeds Standard | Outstanding |
|---|---|---|---|---|---|
| **1. Care of equipment:** The extent to which the employee exercises proper operation and maintenance of equipment. | ☐ Shows a complete disregard for, and is at times deliberately abusive toward equipment. | ◁☐ ☐ Is careless and inconsistent in the care and operation of equipment. Requires close supervision. | ◁☐ ☐ ☒ Makes a reasonable effort to ensure proper operation and maintenance of equipment | ☐ ☐▷ Follows policies and procedures to ensure above average care in the proper use and maintenance of equipment. | ☐ Demonstrates, through self-initiated effort, a high degree of care and concern for all equipment. Ensures against loss or damage by initiating needed maintenance or repair. |
| **2. Cooperativeness:** The extent to which the employee is a team player and is willing to assist others to get the job done and promote harmony and good relationships. | ☐ Makes no effort to work with others to get the job done. General behavior creates disharmony and promotes poor relationships. | ◁☐ ☐ Frequently has to be urged to assist others. Inability or lack of desire to be a team player lowers effectiveness. | ◁☐ ☐ ☐▷ Participates as a team player. Behavior generally promotes harmony and good relationships. | ☒ ☐▷ Often seeks opportunity to assist others and actively participates as a team player. Behavior promotes harmony and good relationships. | ☐ Shows an exceptional interest in getting team results, is self-sacrificing in efforts to help others get the job completed. Behavior consistently promotes harmony and good relationships. |
| **3. Courtesy:** The extent to which the employee is polite, respectful, tactful, considerate and dignified. | ☐ Is often rude and disrespectful in manner and speech. Frequently antagonizes others. | ◁☐ ☐ Tends to be rude and abrupt at times. Can be courteous to others; however, is not consistent in this regard. | ◁☐ ☐ ☐▷ Treats others with respect and generally displays a courteous attitude. | ☒ ☐▷ Recognizes the importance of treating others with courtesy and respect and is able to maintain courteous demeanor even in adverse situation. | ☐ Makes an overt effort to be courteous. Demeanor commands the highest degree of respect and serves as a standard of excellence. |
| **4. Diligence:** The extent to which employee can be relied upon to complete assignments. | ☐ Cannot be relied upon to complete an assignment, except under the closest supervision. | ◁☐ ☐ Often requires follow-up to insure that an assignment is completed in a reasonable length of time. | ◁☐ ☒ ☐▷ Requires routine supervision to ensure that assignments will be completed in a reasonable length of time. | ☐ ☐▷ Minimum supervision required to ensure that assignments are completed within a reasonable length of time. | ☐ Can be consistently relied upon to complete assignments in a timely manner. Sets an example for others and supervision is rarely required. |
| **5. Initiative:** Extent to which the employee displays the motivation necessary to produce without urging. | ☐ Lacks drive and energy and must be continually urged to get results. Requires constant supervision and guidance. | ◁☐ ☐ Tends to be lazy and requires an inordinate amount of specific direction and supervision. | ◁☒ ☐▷ Displays an acceptable level of drive and energy. Only requires routine guidance and direction. | ☐ ☐▷ Is self-motivated and needs little direction. Frequently seeks assignments and takes advantage of opportunities to produce. | ☐ Is highly motivated and requires very little stimulation. Actively pursues every opportunity to increase productivity. Serves as an outstanding example for fellow workers, supervisors, and others. |
| **6. Judgment:** The extent to which the employee considers all available facts before acting and is logical in conclusions and actions. | ☐ Does not consider obvious facts in a situation and fails to act logically. Decisions are unreliable. | ◁☐ ☐ Does not always consider available facts, resulting in some illogical conclusions. Supervisors tend to question and review decisions. | ◁☐ ☒ ☐▷ Gives adequate consideration to all known facts before taking action. Decisions are generally accepted. | ☐ ☐▷ In most cases decisions are sound and reflect thorough consideration of all known facts. | ☐ Displays extraordinary insight and ability to analyze and evaluate facts. Resulting conclusions and actions are consistently reliable. |

1

D 00018

**Exhibit II - 1**

089

| | Unsatisfactory | Below Standard | Meets Standard | Exceeds Standard | Outstanding |
|---|---|---|---|---|---|
| **7. Leadership:** The extent to which the employee is able to accept the responsibility of leadership. Has the ability to obtain satisfactory results. | ☐ Does not demonstrate the ability to obtain the desired results through the work of others. Does not have the respect and confidence of others. | ☐ Possesses leadership capabilities. However, frequently fails to gain the support of those who must be controlled and directed. | ☐ ☐ ⊠ Accepts a leadership role in keeping with the position and generally achieves satisfactory results through the efforts of those directed or controlled. | ☐ ☐ Has the ability to organize, plan, control and guide others very effectively. Consistently gains the confidence and support of those supervised. | ☐ Actively seeks the responsibility of leadership. Possesses exceptional leadership ability to plan, control and organize. Regularly relied upon for advice, assistance and direction. |
| **8. Loyalty** The extent to which the employee supports the department and its policies. The quality of rendering faithful and willing service towards the attainment of department goals. | ☐ Displays antagonistic and resentful attitude towards the department and its policies. | ☐ ☐ At times openly criticizes the department, its procedures, policy and operation. When personally in disagreement does not enthusiastically provide support. | ☐ ⊠ ☐ Generally supportive of the department and its policies. Renders willing and faithful service when called upon. | ☐ ☐ Supports and defends the department and its policies, procedures and operation. Frequently provides willing and faithful service to the department without being called upon. | ☐ Actively supports, defends and promotes the department and its policies and instills such an attitude in others. Sets and exemplary example of devotion to duty. |
| **9. Personal Appearance** The employee's ability to maintain a standard of personal appearance and neatness in keeping with the demands of the position. | ☐ Creates an unfavorable impression. Dresses slovenly or inappropriately. | ☐ ☐ Frequently has been inappropriately or unkindly dressed. General appearance, including dress and personal neatness is not up to standard. | ☐ ☐ ☐ Is presentable in appearance and meets the acceptable standard of dress. | ☐ ☐ Consistently creates a favorable impression. General appearance is above standard. | ⊠ Consistently presents a striking appearance. Sets an example for others and brings credit to the department. |
| **10. Personal Development** The extent to which the employee strives for self improvement and skill development through education. | ☐ Regularly fails to participate in required training programs. | ☐ ☐ Occasionally fails to participate in required training programs. | ☐ ☐ ⊠ Participates in required training programs to maintain skills and knowledge at an acceptable level. | ☐ ☐ Participates in self-initiated training programs and as a result has enhanced skills and knowledge. | ☐ Shows an exceptional interest in personal development by consistent participation in education programs which extend beyond those available through the department. These efforts serve as an example to others. |
| **11. Physical fitness** The employee's physical condition, level of endurance, and ability to react to physically demanding situation. | ☐ Is unable to perform required duties due to a poor physical fitness level. | ☐ ☐ Unable to react effectively to a physically demanding situation or endure strenuous assignments. | ☐ ☐ ☐ Maintains an acceptable level of physical fitness. Successfully reacts to most physical challenges and strenuous assignments. | ☐ ☐ Physical condition exceeds acceptable standards. Is capable of enduring physically demanding situations and strenuous assignments. | ⊠ Is in excellent physical condition and is capable of reacting to any physical challenge. Makes a direct effort to remain physically fit through an ongoing fitness program. |
| **12. Quality of work** The extent to which the employee completes work in a through, neat, accurate and effective manner. | ☐ Work product consistently needs revision as a result of incompleteness, untidiness, inaccuracy or ineffectiveness. | ☐ ☐ Work product frequently reflects a lack of consideration for the factors of thoroughness, neatness and accuracy. An undue amount of review is necessary. | ☐ ⊠ ☐ Work is completed in an acceptable manner. Generally considers the need for neatness, accuracy and thoroughness. | ☐ ☐ Work product is consistently effective, thorough, neat and accurate. Requires minimal supervision. | ☐ Work product is exceptional. Sets an example for others in the completion of work in a very accurate, neat, thorough and effective manner. |
| **13. Safety skills** The extent to which the employee practices safety techniques in both routine and emergency situations. | ☐ Demonstrates little concern for the safety of self or others. Consistently violates safety procedures. | ☐ ☐ Frequently demonstrates poor safety techniques. Requires close supervision. | ☐ ☐ ☐ Generally demonstrates good safety techniques and procedures. | ⊠ ☐ Regularly demonstrates proper and effective safety techniques and procedures. | ☐ Consistently demonstrates exceptional safety techniques. Is outstanding in this capacity and serves as an example to others. |
| **14. Self-expression** The extent to which the employee orally communicates in a clear, precise and convincing manner. | ☐ Is unable to communicate in a clear, precise and convincing manner. | ☐ ☐ Exhibits difficulties in self-expression. Frequently is unable to communicate clearly and precisely. | ☐ ☐ ☐ Is able to communicate in an acceptable manner. | ⊠ ☐ Oral expressions are clear, precise and convincing. | ☐ Projects an outstanding ability to express clear, precise and convincing thought in a group or individual setting. |

2

D 00019

**Exhibit 11 - 2**

090

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceed Standard | Outstanding |
|---|---|---|---|---|---|
| 15. Stability<br>The extent to which the employee displays poise and controls emotions in routine or adverse situations. | Displays a serious lack of self control. Cannot be relied upon in routine or emergency situations. | Frequently loses control of situations. Cannot be relied upon to maintain self-control and poise. | Demonstrates an acceptable level of self-control. Exhibits poise and composure during most situations. | ☒ Is emotionally well balanced. Shows good self-control and poise and can be relied upon to perform under pressure. | Sets an example of poise and self-control. Is exceptionally well balanced and acts in a manner that promotes stability in others. |

**Supervision/Management**

| Standard Factors | Unsatisfactory | Below Standard | Meets Standard | Exceed Standard | Outstanding |
|---|---|---|---|---|---|
| 16. Community Relations<br>The extent to which the employee is involved in developing and furthering positive relationships between the community and the department. | Does not understand the value of community support. Makes no effort to establish good community relationships. | Does not always exhibit an awareness of the need for community support. Makes little effort to develop and further positive community relationships. | Demonstrates an awareness of the value of community support. Ensures that sub-ordinates conduct them-selves in a manner that fosters positive community relation-ships. | Consistently demonstrates a high degree of awareness of community expectations and the need for public support. Participates in community activities. | Develops and maintains positive relationships with community leaders and groups. Participates and encourages subordinate participation in community sponsored programs. |
| 17. Inspection<br>The extent to which the employee conducts ongoing inspections to reveal areas where improvement or correction is needed. | Fails to conduct inspections in order to reveal areas where improvement or correction is needed. | Inspections are inconsistent. Problems are often not recognized nor corrected. | Conducts regular inspections to reveal areas where improvement or correction is needed. Takes necessary action to correct problems. | Inspections are timely and thorough. Problems are corrected and suggestions are made for needed change. | Consistently conducts timely inspections. Identifies problem areas and makes the necessary corrections to ensure a high standard of operation. |
| 18. Personnel Development<br>The extent to which the employee is involved in the professional development of subordinates through evaluation, training, and discipline. | Not concerned with the professional growth, training needs or discipline of subordinates. | Subordinate evaluations are superficial. Rarely involved in subordinate training. Is in consistent in discipline practices. | Involved in the development of subordinates. Evaluations show research and thought. Encourages professional growth through training and appropriate discipline. | Demonstrates an exceptional interest in subordinate development. Uses comprehensive evaluations as a tool to direct training and consistently applies effective discipline. | Committed to the development and growth of subordinates. Evaluations reflect continuous involvement in their training and discipline. |
| 19. Planning and Organizing<br>The extent to which the employee plans and organizes work, utilizing available resources. | Does not effectively plan and organize work. Fails to utilize resources to achieve results. | Has difficulty planning and organizing work. Does not always make use of available resources. | Generally plans and organizes work appropriately. Sets reasonable priorities and makes use of available resources to meet most goals. | Consistently and effectively plan and organizes work. Seeks out and utilizes available resources. | Demonstrates exceptional skill in planning and organizing work. Is innovative in identifying and utilizing resources. |

**20.   Overall Evaluation:  Meets Standard**

This overall evaluation is not an average of the standard factor ratings but is being based on:

1. The employee's value in the present assignment and performance therein during the evaluation period.
2. Consideration of general needs of the department, comparing the capabilities and characteristics of this employee to department standards.

**21.   Comments:**

This performance appraisal for Officer Ramon Warren covers a three-year period. During this rating period Officer Warren was a member of the United States Air Force Reserve and was deployed to active-duty from October 02, 2001 through April 15, 2003.

Officer Warren has been a police officer with the Barstow Police Department since November 03, 1986 and is currently assigned to the patrol division. Officer Warren is a member of the Barstow Police Department Special Response Team. Due to Officer Warren's time with the

3

D 00020

**Exhibit 11 - 3**

091

department, he is considered a senior officer and is generally one of the most experienced officers on his assigned shift.

The information in this evaluation was compiled as a result of input from individuals responsible for the supervision of Officer Warren during this rating period.

## 22. Specific Achievements:

April 30, 2001: Officer Warren received a letter of appreciation from a citizen for his kindness in assisting the citizen's husband. Officer Warren performed above and beyond the call of duty during this incident and assisted this person with his own personal resources.

October 26, 2001: Officer Warren was recognized by the City of Barstow for his 15 years of continuous service to the city.

March 15, 2003: Officer Warren received a Letter of Appreciation from Colonel Jeffrey J. Theulen, USAFR, Deputy Commander of the 99th Security Forces Group for his dedication and performance during his call to service by the Air Force Reserve in the months after the events of September 11, 2001.

May 12, 2003: The Barstow Police Department received a copy of a "Senior Enlisted Performance Report" from the United States Air Force Reserve listing Ramon T. Warren as the rated individual. The report indicates that Officer Warren performs his military functions in an exemplary manner receiving high marks in all categories.

January 26, 2004: Officer Warren received a Letter of Appreciation from Police Chief Lee Gibson for his diligent and professional service to the Baker Community Correctional Facility, in Baker, California during a riot at that facility on December 02, 2003.

## 23. Areas for Improvement:

Officer Warren's self-initiated activity is generally insufficient and his statistics are generally the lowest on his assigned shifts in the area of arrests, citations, vehicle stops and pedestrian checks. Officer Warren rarely conducts Community Oriented Policing projects or attempts to become proactive in dealing with the issues involving the community in the area of law violators or specific law enforcement problems.

Officer Warren is an experienced officer with over 20 years of law enforcement experience, although he has failed to prepare himself for advancement or taken the initiative in furthering his career through education or advanced officer training courses.

## 24. Employees Strongest Points:

Officer Warren is a very likable individual and is always willing to assist his peers in assignments and duties. Officer Warren is very respectful to members of the community as well as members of the Barstow Police Department. Officer Warren presents a very professional demeanor and his overall appearance and physical ability are outstanding.

4

D 00021

Exhibit 11 - 4

092

**25.**   **Additional Information:**

Officer Warren was involved in the misuse of department computers during a practical joke on another employee. The issue was resolved by Officer Warren and Lieutenant Harpole, and there was no further action taken.

Officer Warren submitted a list of future goals and objectives as a part of this evaluation process. I have discussed these goals and objectives with Officer Warren and I would encourage him to make every effort possible to attain his goals, which I believe he is capable and willing to achieve.

**26.**   **Action Plan for Improvement:**

Officer Warren should address the issue of his productivity by improving his self-initiated activity and becoming more involved with Community Oriented Policing projects, when appropriate. Officer Warren's experience and years of service should assist him in becoming a more productive part of the Barstow Police Department.

Officer Warren needs to continue his formal education and on-the-job training to make him more suitable for promotion and/or advancement within the department.

Officer Warren is respected by the junior officers of this department, unfortunately his performance failures set the wrong example for new officers and he needs to make every effort to improve in this area.

**27.**   **Signatures and Approvals:**

**I have discussed this report with a supervisor and understand that signing this evaluation does not necessarily imply agreement.**

| | |
|---|---|
| Evaluated Employee – Officer Ramon Warren | Date 10-28-04 |
| Evaluating Supervisor – Sergeant Mike Hunter | Date 10/20/04 |
| Supervisor Reviewing with Employee | Date 10.28.04 |
| Lt. Rudy Alcantara - Division Commander | Date 10/24/04 |
| Caleb L. Gibson - Chief of Police | Date 10-20-04 |

6

D 00022

Exhibit 11 – 5

093

| F.M. Stewart – City Manager | Date |
|---|---|
| *F. M. Stewart* | 2 NOV 2004 |

## 28.  POLICIES:

Within the last 30 days I have read and I understand the department/city policy concerning sexual harassment.

Yes [RW]   No [ ]   (please initial the appropriate box)

If your answer to the above question is no then you are directed to read the policies concerning sexual har-
assment within the next 30 days.

| Supervisor reviewing with employee | Employee | date |
|---|---|---|
| *SM* | | 10-28-04 |



RECEIVED
NOV 1 2004
BARSTOW
PERSONNEL

6

D 00023

**Exhibit  11 - 6**

094

# MEMORANDUM

**To:**   Sergeant Mike Hunter

**From:** Officer Ray Warren

**Date:** July 3, 2004

**Re:**   Goals and Objectives

---

My goals and Objectives are quite simple. I intend to maintain the high standard of service I have always given as expected by the department. I will do so in keeping with the department mission and values. I will keep myself properly trained and fit. I will also continue to better myself through formal education, thus improving my viability for promotion and lateral assignment. I will always continue to present a positive attitude and be a positive influence on others.

1

D 00024

**Exhibit 11 - 7**

095

Dear Officer Warren,

cc: Paul War ___, Personnel, Lt. Harpole,
Officer Warren, post 4-30-01

Thank you for your kindness to my husband. He met me safely and I will see he gets the help he needs. I am returning your $20 which you so kindly lent him.

Thank you again for your help

Darlene Cuddy

RECEIVED

APR 3 0 2001

Barstow Police Dept.

DARlene Cuddy
9722 Zimbro Ave
Manassas, VA
20110




City of Barstow Police Dept
Officer Ray Warren
220 East Mountain View St.
Barstow, CA
92311-2889

D 00025

**Exhibit  11 - 8**

096



**DATE:**      October 16, 2001

**TO:**        Ramon Warren

**FROM:**      Paul Warner, City Manager

**SUBJECT:**   Employee Service Award Luncheon

Congratulations! You will be receiving an Employee Service Award on October 26, 2001 at the Corporation Yard. We would like to extend an invitation to your family or special guest to attend this function with you.

The luncheon will be from 11:30 a.m. to 1:30 p.m. We look forward to seeing you there.

D 00026

**Exhibit  11 - 9**

097

cc:  City Manager
     Lt. Gibson
     file    3-24-03

15 Mar 03

Deputy Commander
99ᵗʰ SFG
5503 Pease Drive Suite 101
Nellis AFB, NV 89191

*RECEIVED*

MAR 1 ? 2003

Barstow Police Dept.

Barstow Police Department
220 E. Mt View St.
Barstow, CA 92311

Dear Sir or Maam,

I, along with the rest of the 99ᵗʰ Security Forces Group, would like to extend our thanks for the work done by your employee MSgt Ramon Warren. Since September 11, 2001 the need for force protection experts to protect America's most critical resources has been great. MSgt Warren filled the need when called upon by their Country. Their commitment to excellence and unselfless dedication to nearly 18 months of the Air Force mission is a testament to them as Patriots and Citizen Soldiers in the highest American tradition.

We would also like to thank you for your sacrifice during this time. It has not gone unnoticed the sacrifice that an employer makes by allowing us to activate these fine Air Force Reservists. We know that you have gone without and made work-arounds for the gap left by these service members. You should know that your sacrifice has directly allowed the United States Air Force to continue its wartime mission in the current contingency. You too are a citizen in the finest tradition.

We return your employee with leadership experience, critical thinking training, and commitment to duty that will be helpful to your workforce. We hope that this training will be some small thanks for the commitment you have made to the Air Force. On behalf of a grateful Nation, I thank you.

Sincerely,

Colonel (S) Jeffrey J. Theulen USAFR
Deputy Commander

D 00027

**Exhibit 11 - 10**

098



## BARSTOW POLICE DEPARTMENT
Caleb L. Gibson, Chief of Police
220 E. Mt. View St., Suite B, Barstow, CA 92311-2889
(760) 256-3531 • Fax (760) 256-2316

TO:           Officer Ray Warren

FROM:      Lee Gibson, Chief of Police  *LW*

DATE:       January 26, 2004

SUBJECT:  Mutual Aid Assistance


On December 02, 2003, there was a riot at Baker Community Correctional
Facility, in Baker, California. As a result of this incident, the prison officials made
a mutual aid request for additional officers. Since Barstow PD is one of the
closest agencies to the remote prison, the decision was made to send as many
officers as we could to help stabilize the situation. You were one of the officers
who responded to Baker Prison to help restore order in this volatile situation.
Because of your efforts, in combination with the efforts of others, order was
restored, and no prisoners escaped.

The Warden of Baker Prison, Charles Ayers, presented a Certificate of
Appreciation to the Barstow Police Department in recognition of our "outstanding
performance and valuable contributions".

I want to thank you for your contribution to the successful conclusion of this
incident. You performed your duty in a diligent and professional manner, which
enhanced your reputation, and the reputation of the Barstow Police Department.

CLG:bb

cc: Mayor Dale and City Council Members
    Vijay Singhal, City Manager
    J.L. Harpole

D 00028

**Exhibit  11 - 11**

Exhibit 12

100

## MEMORANDUM

To:        Officer Ray Warren

From:      Sergeant Keith Libby

Date:      12-4-06

Subject:   Reprimand For Unexcused Absence
           (City of Barstow Policy #401)

On 12-4-06 you were scheduled to work day shift from 0600-1400 hours. This schedule was announced well in advance and posted on the Administrative bulletin board in the hallway of the Patrol Division offices. Copies of this schedule were presented to you and all Patrol Division staff.

However, you did not appear for work as scheduled, at 0600. As you know, I spoke with you by phone at approximately 0650 and you reported for duty at approximately 0815 hours. As a result of that conversation I learned that you mistakenly believed that you were supposed to be on regularly scheduled days off. You apparently misunderstood the recent days off rotation which switched you from days off of Sunday/Monday to Tuesday/Wednesday.

Your failure to report for duty, on Monday 12-4-06, is compounded by the fact that you had also failed to report for duty on the day prior, Sunday 12-3-06 and it was necessary to call you at home. Sgt Ramirez reports that after the call you arrived at work at approximately 0800. Sgt Ramirez advised me that he verbally counseled you for your absence on Sunday 12-3-06.

This conduct is in direct violation of City of Barstow policy #401 which states: "Employees of the City of Barstow shall report for duty at the assigned time on scheduled work days. Absence for reasons other than sickness without prior approval of the employee's immediate supervisor shall be considered unexcused absence". This policy continues, "Unexcused absences shall result in disciplinary action including possible suspension or discharge."

You are admonished that your failure to report for duty as scheduled, or to communicate any attendance problems, is detrimental to the operation of this department. Further violations of this nature could result in additional discipline.

Pursuant to Section 3304(b) of the California Government code, you are entitled to request an administrative appeal by the Chief of Police within ten calendar days of receiving this letter or reprimand.

Pursuant to Section 3305 of the California Government Code; "No public safety officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for personnel purposes by his employer, without the public safety officer having

D 00217

**Exhibit 12 - 1**

101

first read and signed the instrument containing the adverse comment indicating that he is aware of such comment, except that such entry may be made if after reading such instrument the public safety officer refuses to sign it. Should a public safety officer refuse to sign, that fact shall be noted on the document, and signed or initialed by such officer."

Pursuant to Section 3306 of the California Government Code: "A public safety officer shall have 30 days within which to file a written response to any adverse comment entered into his personnel file. Such written response shall be attached to and shall accompany the adverse comment",

·Sgt. Keith Libby

Lt. Rudy Alcantara

Read and accepted:

Ofc. Ray Warren                    12-8-06

Declined to accept:

Ofc. Ray Warren

D 00218

**Exhibit 12 - 2**

102

# Exhibit 13

1   Michael A. McGill, SBN 231613
    mcgill@policeattorney.com
2   Russell M. Perry, SBN 246252
    Russell@policeattorney.com
3   **LACKIE & DAMMEIER APC**
    367 North Second Avenue
4   Upland, CA 91786
    Telephone: (909) 985-4003
5   Facsimile: (909) 985-3299

6   Attorneys for Plaintiff
    RAY WARREN
7

8               **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  RAY WARREN,                        )  Case No.: EDCV08-0405-SGL
                                       )  (OPx)
12              Plaintiff,             )
                                       )  *Honorable Steven G. Larson, Dept.*
13       vs.                           )  *11*
                                       )
14  CITY OF BARSTOW, HECTOR            )  **PLAINTIFF RAY WARREN'S**
    RODRIGUEZ, in his capacity as the  )  **RESPONSE TO DEFENDANTS'**
15  City Manager for the City of Barstow;  )  **REQUEST FOR PRODUCTION**
    CALEB LEE GIBSON, individually     )  **OF DOCUMENTS, SET ONE**
16  and in his capacity as Chief of Police  )
    for the City of Barstow; RUDY      )
17  ALCANTARA, individually and in his )
    capacity as Lieutenant for the City of  )
18  Barstow Police Department; MICHAEL )
    P. HUNTER, individually and in his )
19  capacity as Sergeant for the City of  )
    Barstow; and DOES 1 through 9      )
20  inclusive,                         )
                                       )
21              Defendants.            )
                                       )
22

23  PROPOUNDING PARTY:      DEFENDANT CITY OF BARSTOW, ET AL.

24  RESPONDING PARTY:       PLAINTIFF RAY WARREN

25  SET NO.:                ONE (1)

26       Plaintiff RAY WARREN ("Plaintiff") hereby responds to the First Set of

27  Request for Production of Documents by Defendant CITY OF BARSTOW, ET

28  AL. ("Defendant"), as follows:

    PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
                              DOCUMENTS, SET ONE
                                     1

**Exhibit 13 - 1**

104

## PRELIMINARY STATEMENT

Plaintiff is continuing its investigation and discovery in this action. Plaintiff therefore responds to Defendants' Request for Production of Documents to the best of its knowledge, but in doing, reserves its right to amend its responses at a future date. Plaintiff further reserves the right to offer, at the time of trial, facts, testimony, or documents not included in these responses, but discovered by Plaintiff subsequent to serving these responses.

Furthermore, Plaintiff assumes no obligation to voluntarily supplement or amend these responses to reflect witnesses, facts, or any other evidence discovered following the service of these responses.

## GENERAL OBJECTIONS

1.     Plaintiff objects to each of Defendant's requests for production on the grounds that such requests are vague, ambiguous, and overbroad and unduly burdensome and oppressive.

2.     Plaintiff objects to each of Defendant's requests for production on the grounds that such requests seek information which is irrelevant (unlikely to lead to the discovery of admissible evidence) and beyond the issues raised in this litigation. By responding to Defendant's requests for production, Plaintiff does not concede the relevancy or materiality of any request, or of the subject to which such request refers. Each response is made subject to all objections as to competence, relevance, materiality, propriety, and admissibility, as well as any or all other objections and grounds which would require exclusion of the evidence.

3.     Plaintiff objects to each of Defendant's requests for production to the extent any is directed to any information that is subject to the attorney-client or attorney work product privileges. Plaintiff will not supply or render any

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE
*f*~ 2

**Exhibit 13 - 2**

105

1 information protected from discovery under these or any other applicable
2 privileges.

3     4.     Plaintiff objects to Defendant's requests for production to the extent
4 that they seek information which violates the constitutional rights of privacy of
5 certain individuals, including employees of Defendant.

6     5.     Plaintiff objects generally to any Request for Production of
7 Documents by which Defendant seeks to prejudice Plaintiff's right to produce
8 evidence of any facts discovered subsequent to the preparation of these responses.

9     6.     Plaintiff objects to the requests for production to the extent they seek
10 information not presently in Plaintiff's possession, custody or control, or already in
11 Defendant's possession. Plaintiff's investigation and discovery of this case are
12 ongoing. The following responses are given without prejudice to Plaintiff's right
13 to produce or rely on any evidence subsequently discovered.

14     7.     The specific responses and objections given below are submitted
15 without prejudice to, and without waiving, any of these general objections.

16

17 **RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS**

18

19 **REQUEST NO. 1:**

20     All DOCUMENTS that support the Fifth Claim for Relief of YOUR
21 COMPLAINT ("Violation of 42 U.S.C. §1983") as against the CITY.

22 **RESPONSE TO REQUEST NO. 1:**

23     Plaintiff is not in possession of responsive documents, however, responsive
24 documents may be found in the BPD record [Memo given to Alcantara initiating
25 complaint].

26 **REQUEST NO. 2:**

27     All DOCUMENTS that support the Fifth Claim for Relief of YOUR
28 COMPLAINT ("Violation of 42 U.S.C. §1983") as against GIBSON.

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE
*  3

**Exhibit 13 - 3**

106

1  **RESPONSE TO REQUEST NO. 2:**

2       Plaintiff is not in possession of responsive documents, however, responsive

3  documents may be found in the BPD record [Memo given to Alcantara initiating

4  complaint].

5  **REQUEST NO. 3:**

6       All DOCUMENTS that support the Fifth Claim for Relief of YOUR

7  COMPLAINT ('Violation of 42 U.S.C. §1983") as against ALCANTARA.

8  **RESPONSE TO REQUEST NO. 3:**

9       Plaintiff is not in possession of responsive documents, however, responsive

10  documents may be found in the BPD record [Memo given to Alcantara initiating

11  complaint].

12  **REQUEST NO. 4:**

13       All DOCUMENTS that support the Fifth Claim for Relief of YOUR

14  COMPLAINT ('Violation of 42 U.S.C. §1983") as against HUNTER.

15  **RESPONSE TO REQUEST NO. 4:**

16       Plaintiff is not in possession of responsive documents, however, responsive

17  documents may be found in the BPD record [Memo given to Alcantara initiating

18  complaint].

19  **REQUEST NO. 5:**

20       All DOCUMENTS RELATING TO the "memorandum indicating that

21  DEPARTMENT personnel was not permitted to contact any other DEPARTMENT

22  personnel member who was off or [sic] work due to a work-related injury" as

23  alleged in paragraph 41 of the COMPLAINT.

24  **RESPONSE TO REQUEST NO. 5:**

25       Plaintiff is not in possession of responsive documents, however, responsive

26  documents may be found in the BPD record, also voiced by on-duty watch

27  commanders.

28  **REQUEST NO. 6:**

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE
f - 4

**Exhibit 13 - 4**

107

1  All DOCUMENTS RELATING TO the "directive" GIBSON and
2  ALCANTARA issued "ordering that before PLAINTIFF were to visit or speak
3  with a [sic] non-DEPARTMENT personnel, that he must first inform and/or get
4  [sic] such visit or ability to speak with the Watch Commander" as alleged in
5  paragraph 42 of the COMPLAINT.

6  **RESPONSE TO REQUEST NO. 6:**

7  Unaware of this directive, request is not clear.

8  **REQUEST NO. 7:**

9  All DOCUMENTS RELATING TO the "new policy instituted by GIBSON
10 mandating the BPOA members could not be relieved of duty unless all their reports
11 had been completed" as alleged in paragraph 51 of the COMPLAINT.

12 **RESPONSE TO REQUEST NO. 7:**

13 Plaintiff is not in possession of responsive documents, however, responsive
14 documents may be found in the BPD record.

15 **REQUEST NO. 8:**

16 All DOCUMENTS RELATING TO the "Letter of No Confidence" YOU
17 were accused of authoring and sending as alleged in paragraph 52 of the
18 COMPLAINT.

19 **RESPONSE TO REQUEST NO. 8:**

20 Plaintiff is not in possession of responsive documents, however, responsive
21 documents may be found in the City of Barstow record, City refused to furnish me
22 with a copy upon official written request.

23 **REQUEST NO. 9:**

24 All DOCUMENTS RELATING TO YOUR allegation that "ALCANTARA
25 began improperly and on numerous occasions demanding that PLAINTIFF provide
26 the DEPARTMENT with forecasted schedules related to PLAINTIFF'S military
27 duty" as alleged in paragraph 39 of the COMPLAINT.

28

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE
/ - 5

**Exhibit 13 - 5**

1  **RESPONSE TO REQUEST NO. 9:**

2      Plaintiff is not in possession of responsive documents.

3  **REQUEST NO. 10:**

4      All DOCUMENTS RELATING TO YOUR allegation that "ALCANTARA

5  also improperly contacted PLAINTIFF'S military unit demanding" "forecasted

6  schedules related to PLAINTIFF'S military duty" as alleged in paragraph 39 of the

7  COMPLAINT.

8  **RESPONSE TO REQUEST NO. 10:**

9      Unaware of such documents.

10  **REQUEST NO. 11:**

11      All DOCUMENTS RELATING TO YOUR allegation that YOU "lodged a

12  formal Complaint to the CITY against ALCANTARA who had been improperly

13  contacting a female BPOA member (C. Jackson) who was convalescing from an

14  on-duty car crash and resulting injuries" as alleged in paragraph 41 of the

15  COMPLAINT.

16  **RESPONSE TO REQUEST NO. 11:**

17      Plaintiff is not in possession of responsive documents, however, responsive

18  documents may be found in the City of Barstow record.

19  **REQUEST NO. 12:**

20      All DOCUMENTS RELATING TO YOUR allegation that

21  ALCANTARA'S contact of "a female BPOA member (C. Jackson) who was

22  convalescing from an on-duty car crash and resulting injuries" was "in violation of

23  the CITY policies and practices, and state law" as alleged in paragraph 41 of the

24  COMPLAINT.

25  **RESPONSE TO REQUEST NO. 12:**

26      Unaware of such documents.

27  **REQUEST NO. 13:**

28      All DOCUMENTS RELATING TO YOUR allegation that YOU advocated

**Exhibit 13 - 6**

109

1  for institution of a corporal program as alleged in paragraph 43 of the
2  COMPLAINT.
3  **RESPONSE TO REQUEST NO. 13:**
4      Plaintiff is not in possession of responsive documents, however, responsive
5  documents may be found in the City of Barstow record.
6  **REQUEST NO. 14:**
7      All DOCUMENTS RELATING TO YOUR allegation that the CITY
8  approved and required institution of a corporal program as alleged in paragraph 43
9  of the COMPLAINT.
10 **RESPONSE TO REQUEST NO. 14:**
11     Plaintiff is not in possession of responsive documents, however, responsive
12 documents may be found in the City of Barstow record.
13 **REQUEST NO. 15:**
14     All DOCUMENTS RELATING TO YOUR allegation that YOUR advocacy
15 for institution of a corporal program angered GIBSON as alleged in paragraph 43
16 of the COMPLAINT.
17 **RESPONSE TO REQUEST NO. 15:**
18     Unaware of such documents.
19 **REQUEST NO. 16:**
20     All DOCUMENTS RELATING TO YOUR allegation that "during one
21 meeting" GIBSON "openly accused PLAINTIFF of lying" to the members of the
22 Barstow Police Officers' Association as alleged in paragraph 44 of the
23 COMPLAINT.
24 
25 **RESPONSE TO REQUEST NO. 16:**
26     Unaware of such documents.
27 **REQUEST NO. 17:**
28     All DOCUMENTS RELATING TO YOUR allegation that GIBSON refused
   to meeting with YOU regarding "labor organizational concerns" as alleged in

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE
/- 7

**Exhibit 13 - 7**

1  paragraph 46 of the COMPLAINT.

2  **RESPONSE TO REQUEST NO. 17:**

3      Plaintiff is not in possession of responsive documents, however, responsive

4  documents may be found in the City of Barstow record. (email)

5  **REQUEST NO. 18:**

6      All DOCUMENTS RELATING TO YOUR allegation that "GIBSON AND

7  ALCANTARA imposed as adverse employment action against PLAINTIFF by

8  refusing to allow him to continue ride-a-longs" as alleged in paragraph 47 of the

9  COMPLAINT.

10  **RESPONSE TO REQUEST NO. 18:**

11      Plaintiff is not in possession of responsive documents, however, responsive

12  documents may be found in the City of Barstow record. (email)

13  **REQUEST NO. 19:**

14      All DOCUMENTS RELATING TO YOUR allegation that YOU were the

15  only police officer reprimanded for arriving to work late on December 4, 2006, as

16  alleged in paragraph 48 of the COMPLAINT.

17  **RESPONSE TO REQUEST NO. 20:**

18      Plaintiff is not in possession of responsive documents, however, responsive

19  documents may be found in the City of Barstow record.

20  **REQUEST NO. 20:**

21      All DOCUMENTS RELATING TO YOUR allegation that YOUR removal

22  from the position of Officer-in-Charge was an adverse employment action as

23  alleged in paragraph 49 of the COMPLAINT.

24  **RESPONSE TO REQUEST NO. 20:**

25      Plaintiff is not in possession of responsive documents, however, responsive

26  documents may be found in the City of Barstow record. (email)

27  **REQUEST NO. 21:**

28      All DOCUMENTS RELATING TO YOUR allegation that YOU "actively

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE
1 - 8

**Exhibit 13 - 8**

111

1  campaigned on behalf of the BPOA for a Three Day/Twelve-Hour shift for BPOA
2  membership in lieu of the eight-hour shift" as alleged in paragraph 50 of the
3  COMPLAINT.
4  **RESPONSE TO REQUEST NO. 21:**
5      See Attachments
6  **REQUEST NO. 22:**
7      All DOCUMENTS RELATING TO YOUR allegation that YOUR
8  assignment to the School Resources Officers position was an adverse employment
9  action as alleged in paragraph 50 of the COMPLAINT.
10 **RESPONSE TO REQUEST NO. 22:**
11     See Attachments.
12 **REQUEST NO. 23:**
13     All DOCUMENTS RELATING TO YOUR allegation that YOU
14 "challenged a new policy instituted by GIBSON mandating that BPOA members
15 could not be relieved of duty unless all their reports had been completed" as
16 alleged in paragraph 51 of the COMPLAINT.
17 **RESPONSE TO REQUEST NO. 23:**
18     Unaware of such documents.
19 **REQUEST NO. 24:**
20     All DOCUMENTS RELATING TO YOUR allegation that YOUR challenge
21 of the "new policy" that BPOA members could not be relieved of duty unless all
22 their reports had been completed" angered GIBSON as alleged in paragraph 51 of
23 the COMPLAINT.
24 **RESPONSE TO REQUEST NO. 24:**
25     Unaware of such documents.
26 **REQUEST NO. 25:**
27     All DOCUMENTS RELATING TO YOUR allegation that GIBSON
28 accused YOU of "authoring and sending a Letter of No Confidence to CITY

**Exhibit 13 - 9**

112

1 | officials" as alleged in paragraph 52 of the COMPLAINT.

2 | **RESPONSE TO REQUEST NO. 25:**

3 |   Unaware of such documents.

4 | **REQUEST NO. 26:**

5 |   All DOCUMENTS RELATING TO YOUR allegation that GIBSON made

6 | "false accusations against PLAINTIFF that PLAINTIFF had told a Barstow City

7 | Council member that the DEPARTMENT should be taken over by the Sheriff's

8 | Department" as alleged in paragraph 56 of the COMPLAINT.

9 | **RESPONSE TO REQUEST NO. 26:**

10 |   Unaware of such documents.

11 | **REQUEST NO. 27:**

12 |   All DOCUMENTS RELATING TO YOUR allegation that YOU assisted a

13 | "BPOA member" with the reporting of a sexual harassment complaint as alleged in

14 | paragraph 62 of the COMPLAINT.

15 | **RESPONSE TO REQUEST NO. 27:**

16 |   Plaintiff is not in possession of responsive documents, however, responsive

17 | documents may be found in the City of Barstow record.

18 | **REQUEST NO. 28:**

19 |   All DOCUMENTS RELATING TO YOUR employment with the CITY and

20 | the allegations of the COMPLAINT.

21 | **RESPONSE TO REQUEST NO. 28:**

22 |   Plaintiff is not in possession of responsive documents, however, responsive

23 | documents may be found in the City of Barstow record.

24 | **REQUEST NO. 29:**

25 |   All DOCUMENTS RELATING TO GIBSON and the allegations of the

26 | COMPLAINT.

27 | **RESPONSE TO REQUEST NO. 29:**

28 |

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE
1 - 10

**Exhibit 13 - 10**

1  Plaintiff is not in possession of responsive documents, however, responsive
2  documents may be found in the City of Barstow record.
3  **REQUEST NO. 30:**
4  All DOCUMENTS RELATING TO ALCANTARA and the allegations of
5  the COMPLAINT.
6  **RESPONSE TO REQUEST NO. 30:**
7  Plaintiff is not in possession of responsive documents, however, responsive
8  documents may be found in the City of Barstow record.
9  **REQUEST NO. 31:**
10  All DOCUMENTS RELATING TO HUNTER and the allegations of the
11  COMPLAINT.
12  **RESPONSE TO REQUEST NO. 31:**
13  Plaintiff is not in possession of responsive documents, however, responsive
14  documents may be found in the City of Barstow record.
15  **REQUEST NO. 32:**
16  All DOCUMENTS that RELATE TO all efforts you HAVE undertaken to
17  obtain employment since the termination of YOUR employment with the CITY
18  including the names and addresses of potential employers, employment agencies,
19  and "headhunters" YOU have contacted concerning employment.
20  **RESPONSE TO REQUEST NO. 32:**
21  N/A. given employment by a friend
22  **REQUEST NO. 33:**
23  All DOCUMENTS that RELATE TO employment YOU have had since
24  leaving the CITY, including, without limitation, all employment application s, job
25  descriptions, benefits information, pay stubs, pay checks, contracts, agreements,
26  policies and procedures manuals, handbooks, memoranda issued by any employee
27  or management personnel, acknowledgment forms and performance reviews.
28  **RESPONSE TO REQUEST NO. 33:**

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE

**Exhibit 13 - 11**

114

1     Objection: Relevance. Plaintiff has a right to privacy to his personnel file of

2 his current employer. Without waiving this objection plaintiff responds: Plaintiff is

3 not in possession of responsive documents, however, responsive documents may

4 be found with the U.S. Air force and State of California 28th District Agricultural

5 Association (San Bernardino County Fairgrounds). Plaintiff reserves the right to

6 supplement this response.

7 **REQUEST NO. 34:**

8     All DOCUMENTS that RELATE TO the termination of YOUR

9 employment at the CITY.

10 **RESPONSE TO REQUEST NO. 34:**

11     Plaintiff is not in possession of responsive documents, however, responsive

12 documents may be found in the City of Barstow record.

13 **REQUEST NO. 35:**

14     All DOCUMENTS that RELATE TO any aspect of YOUR employment at

15 the CITY at any time, including, without limitation, all employment applications,

16 job descriptions, benefits information, pay stubs, pay checks, contracts,

17 agreements, policies and procedures manuals, handbooks, memoranda issued by an

18 employee or management personnel, acknowledgment forms and performance

19 reviews.

20 **RESPONSE TO REQUEST NO. 35:**

21     Plaintiff is not in possession of responsive documents, however, responsive

22 documents may be found in the City of Barstow record.

23 **REQUEST NO. 36:**

24     All DOCUMENTS that support any of the damage claims which YOU are

25 advancing in this action, including the dollar amount of such claims.

26 **RESPONSE TO REQUEST NO. 36:**

27     Objection: calls for expert testimony. Plaintiff is not an economist. Plaintiff

28 is not in possession of responsive documents, however, responsive payroll

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE
1 - 12

**Exhibit 13 - 12**

115

1  documents may be found with the City of Barstow. Discovery is continuing and
2  Plaintiff reserves the right to supplement this response.
3  **REQUEST NO. 37:**
4     All DOCUMENTS that RELATE TO any communications between YOU or
5  anyone action on YOUR behalf (other than YOUR counsel) and any other
6  PERSON concerning any of the allegations of the COMPLAINT, including, but
7  not limited to, correspondence, memoranda, and notes of telephone calls.
8  **RESPONSE TO REQUEST NO. 37:**
9     Unaware of such documents.
10 **REQUEST NO. 38:**
11    All statements, declarations OR affidavits (written or oral) given or made by
12 any PERSON that RELATE TO any of the allegations of the COMPLAINT.
13 **RESPONSE TO REQUEST NO. 38:**
14    Plaintiff is not in possession of responsive documents.
15 **REQUEST NO. 39:**
16    All DOCUMENTS that RELATE TO the identity of any PERSON whom
17 YOU believe possesses any information OR knowledge concerning any of the facts
18 alleged in the COMPLAINT.
19 **RESPONSE TO REQUEST NO. 39:**
20    Unaware of such documents.
21 **REQUEST NO. 40:**
22    All DOCUMENTS that RELATE TO any lawsuits YOU have brought at
23 any time, other than this action, including but not limited to pleadings,
24 correspondence, and discovery.
25 **RESPONSE TO REQUEST NO. 40:**
26    Plaintiff is not in possession of responsive documents, however, responsive
27 documents may be found in the records of LA County Courts. I sued a mortgage
28

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE
13

**Exhibit 13 - 13**

116

1 company long ago for failure to reimburse an appraisal fee when refinancing
2 mortgage.
3 **REQUEST NO. 41:**
4 　　All DOCUMENTS that RELATE TO any lawsuits which have been brought
5 against YOU at any time including but not limited to pleadings, correspondence,
6 and discovery.
7 **RESPONSE TO REQUEST NO. 41:**
8 　　Plaintiff is not in possession of responsive documents, however, responsive
9 documents may be found in the City of Barstow record.
10 **REQUEST NO. 42:**
11 　　All DOCUMENTS that RELATE TO YOUR employment with any
12 employer other than the CITY within the past 10 years (whether before, during or
13 after YOUR employment with the CITY), including, without limitation, all
14 employment applications, job descriptions, employment contracts, policy and
15 procedures manuals, memoranda, salary OR benefits information AND termination
16 documents.
17 **RESPONSE TO REQUEST NO. 42:**
18 　　Plaintiff is not in possession of responsive documents, however, responsive
19 documents may be found with the U.S. Air force and State of California 28th
20 District Agricultural Association (San Bernardino County Fairgrounds). Plaintiff
21 reserves the right to supplement this response.
22 **REQUEST NO. 43:**
23 　　All DOCUMENTS that RELATE TO any claim, charge OR complaint
24 which YOU filed against anyone, including the CITY, with any federal, state OR
25 local government agency which RELATE TO any aspect of YOUR employment
26 with the CITY.
27 **RESPONSE TO REQUEST NO. 43:**
28

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF
DOCUMENTS, SET ONE
14

**Exhibit 13 - 14**

117

1       Plaintiff is not in possession of responsive documents, however, responsive

2  documents may be found in the City of Barstow record.

3  **REQUEST NO. 44:**

4       All DOCUMENTS that RELATE TO any care, treatment or consultation

5  with any health care provider, including mental health care professional, which

6  YOU received for injuries which YOU claim to have suffered as a result of the

7  wrongful conduct alleged in the COMPLAINT.

8  **RESPONSE TO REQUEST NO. 44:**

9       Unaware of such documents.

10  **REQUEST NO. 45:**

11       All DOCUMENTS that RELATE TO any care, treatment or consultation

12  with any health care provider, including mental health care professional, which

13  YOU received at any time during the five (5) year period prior to the wrongful

14  conduct alleged in the COMPLAINT.

15  **RESPONSE TO REQUEST NO. 45:**

16       Unaware of such documents.

17  **REQUEST NO. 46:**

18       All DOCUMENTS that RELATE TO all medications, both prescribed and

19  over-the-counter, YOU have received at any time for injuries which YOU claim to

20  have suffered as a result of the wrongful conduct alleged in the COMPLAINT.

21  **RESPONSE TO REQUEST NO. 46:**

22       Unaware of such documents.

23  **REQUEST NO. 47:**

24       All DOCUMENTS that RELATE TO all medications, both prescribed and

25  over-the-counter, YOU have received at any time during the five (5) year period

26  prior to the wrongful conduct alleged in the COMPLAINT.

27  **RESPONSE TO REQUEST NO. 47:**

28       Unaware of such documents.

1

2  Dated: December 11, 2009                          LACKIE & DAMMEIER APC

3

4                                                By: _____

5                                                    Michael A. McGill
                                                     Russell M. Perry
6
                                                     Attorneys for Plaintiff,
7                                                    RAY WARREN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF RAY WARREN'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE
16

**Exhibit 13 - 16**

Exhibit 14

Message                                                                      Page 1 of 1

## Eileen Martin

From:     Ray Warren
Sent:     Wednesday, November 01, 2006 8:34 AM
To:       Eileen Martin
Cc:       'dieter@policeattorney.com'
Subject:  Officer Jackson

Eileen,
I have had conversation with Officer Jackson since she has been off work due to her on-duty injury. She has told me that she has been following the instructions of her doctors and eagerly anticipates returning to work in the near future. She also told me that she has received several telephone calls from Lt. Alcantara since being put off on workers comp. time. She said these calls have been to her cell phone and at home. She said that Lt. Alcantara has been calling her almost on a daily basis or at least every other day, inquiring as to her status. She told me these calls have made her quite uncomfortable. She said she feels as though she is being pressured to expedite her return to work. She is reluctant to mention this because she fears retaliation of she says anything.

If this practice is acceptable then so be it. We thought that it was the responsibility of HR to oversee this process and only ask that she be allowed to heal in peace.

ray

7/30/2007



DEFENDANT'S
EXHIBIT NO.
FOR IDENTIFICATION
DATE

D 00397

121

# Exhibit 15

Message

Page 1 of 1

## Eileen Martin

From:   Ray Warren
Sent:   Friday, January 05, 2007 8:41 AM
To:     Rudy Alcantara
Cc:     'dister@policeattorney.com'; Eileen Martin
Subject: Concern.

Rudy,
This is just a note to document a concern. Recently I was mistakenly late two days in a row at the change of days off. Resulting from this I was given a letter of reprimand. The reprimand was not necessary but never the less I was reprimanded. Also at this change of days off, another officer completely failed to show up to work. Attempts to contact him at home, his cell phone and department pager were unsuccessful. This officer was not reprimanded. I do not expect any further action but I wanted to make known my concern.

Respectfully,
Ray Warren



7/30/2007

D 00404

123

# Exhibit 16

Message                                                                                                  Page 1 of 1

## Eileen Martin

**From:**  Ray Warren
**Sent:**  Sunday, December 03, 2006 11:08 AM
**To:**  'mceanray@verizon.net'; Eileen Martin
**Subject:** FW: Ride-a-longs

Eileen,
Just FYI. We'll see where this goes.

-----Original Message-----
**From:** Ray Warren
**Sent:** Sunday, December 03, 2005 11:08 AM
**To:** Rudy Alcantara
**Cc:** 'dieter@policeattorney.com'
**Subject:** Ride-a-longs

Rudy,
On Wednesday, 11-22-06, I had conversation with Roger Martin and he asked me about coming in to do a ride-a-
long. I told him I would ask Keith Libby about it and get back to him. Keith told me that this would have to go
through you to be ok'd. I was not able to locate you that day so I told Roger to contact you. The next day, 11-23-
06, Roger contacted me and told me he had spoken with you later in the afternoon on 11-22-06. He said that
when he asked you about coming in to ride with me, you immediately asked him who had initiated the subject of
coming in to ride. I don't know why this would matter. He then told you that it was his idea. Until this time I did
not know he intended to ride with me, which is here nor there as far as I'm concerned. He then told me that you
told him that there were some sort of departmental problems that precluded him from doing a ride-a-long. He said
you assured him 3 or 4 times that this was nothing to do with him and that it was because of issues within the
department. After this I spoke with Keith Libby and Albert Ramirez and asked about any changes or departmental
problems regarding ride-a-longs. Neither of them knew anything about any changes or problems, and both simply
said that ride-a-longs needed to go through you. It was interesting to note that on the following Saturday a
gentleman came in and participated in a ride-a-long with Officer Tollefson.

I guess I don't understand. As it stands I have been summarily excluded from promotions, SRT, FTO, OIC and
now citizen ride-a-longs. It is no secret that I am not held in high favor with management, as I have mentioned to
the Chief. This does not mean that I should be treated any different than anyone else. You are still obligated to
treat me fairly and equitably. Please explain to me what has changed with ride-a-longs?

Respectfully,
Ray Warren

7/30/2007

10


DEFENDANT'S
EXHIBIT NO. 10
FOR IDENTIFICATION
Warren
DATE

D 00401

125